## No. XIX.

## L. W. TINNEN v. E. MATTHEWS.

### (See Note 42.)

*Appeal from Harris County.*

HEMPHILL, CHIEF JUSTICE.—The action was brought in this case on a note of hand drawn by the appellant in favor of James Weatherford, and by a second indorsement transferred to the appellee. On the first day of the term of the court to which the writ was returnable, the defendant in the court below craved oyer of the note on which the suit was instituted, and the defendant thereof prayed judgment for costs. On the fifth day of the term the entry states that the demurrer of the defendant was overruled and the issue joined submitted to a jury, who returned a verdict for plaintiff for $318. Judgment was entered for not only the amount of said verdict, but for the additional sum of $85.54 as damages for the detention of the debt. A motion was made for a new trial on the ground that the cause was submitted to the jury without answer on the part of the defendant putting in issue any fact whatsoever; that a judgment in default should have been rendered against him; that by law he would have been entitled to a term of three days thereafter to plead any matters in his defense; and that he has a legal and valid defense to the action. The motion for a new trial was overruled, and an appeal has been taken to this court. From the entries in this cause it would seem, that the craving of oyer on the part of the defendant was regarded as a demurrer to the plaintiff's petition. This is doubtless a misentry of the clerk. The distinction between the demand of oyer and the plea in law styled demurrer is so palpable that the possibility of their being confounded by a judicial tribunal can not well be supposed. It will be unnecessary to discuss at length the frivolous distinction by which in the courts, governed purely by the common law, oyer is granted of sealed and is refused of unsealed instruments.

This was an arbitrary difference founded on no solid grounds, and in England at the present time is evaded and rendered nugatory. In that country the judges will in most cases at the demand of the opposite party order the inspection and a copy of unsealed instruments. It may well be doubted whether such a distinction can properly exist under the system of pleading authorized by the laws of this country. The right of oyer under the common law, is founded on the necessity imposed on the opposite party when relying on a deed, bond, etc., as the foundation of the

Smith, 88 T., 9; Robinson v. Moore, 1 T. C. A., 93; G. C. & S. F. Ry. Co. v. Vieno, 7 T. C. A., 347; Quithana v. Smelting Co., 14 T. C. A., 347; G. H. & S. A. Ry. Co. v. Scott, 18 T. C. A., 321; Burnett v. Edling, 19 T. C. A., 711; Masterson v. Bockel, 20 T. C. A., 416; Dutton v. Mason, 21 T. C. A., 389; F. W. & D. C. Ry. Co. v. Rogers, 21 T. C. A., 605; Standart v. Vivion, 22 T. C. A., 144; Cranfil v. Hayden, 22 T. C. A., 656; Jones v. Drug Co., 25 T. C. A., 234; Jones v. Brazile, 1 App. C., sec. 299; Rogers v. Harrison, 1 App. C.,

cause of action, or as a ground of defense, to make profert of the deed, bond, etc.  No profert is made of a promissory note, and therefore the right of oyer did not arise.  These are technical distinctions of the system of pleading under the common law.  Under the simplicity of the system adopted by the statutes of this Republic they must surely be unknown.  Our statute prescribing the essential allegation of a petition makes no discrimination between petition on a bond and one on a note. It certainly does not contemplate that profert should be made in the one case and not in the other; and as the basis on which the rights of oyer, technically so called, is swept away, it would seem absurd that this obnoxious distinction should continue to exist.  We are, however, of opinion that in all cases where the action or defense is founded on a written instrument, whether sealed or unsealed, the opposite party is on motion before issue joined entitled to inspection of the same, and that the judge below erred in not granting the prayer of the defendant for oyer of the instrument sued on.

The record shows that judgment was entered upon the fifth day of the term.  This, we are of opinion, was error.  There being no answer, judgment by default should have been taken on the second day of the term; and if in three days thereafter the defendant neither appeared nor filed his answer, definitive judgment should have been given for plaintiff.

The proper construction of the third and fourth sections of the "act regulating civil suits," approved February 5, 1840, does not seem to authorize the renditions of definitive judgment where the defendant does not appear and answer before the sixth day of the term of the court; and consequently the judgment in this cause was premature and in violation of the rights of the defendant.

Another error apparent on the face of the record was alluded to in the argument and brief of counsel.  The verdict of the jury is for the sum of $318.  Judgment is entered thereon for that amount, and for the additional sum of $85.54 as damages for the detention of the debt.  This was unauthorized, as there is no principle of law more firmly established than that the judgment must correspond with the verdict.

It is ordered, adjudged and decreed that the judgment of the court below be and the same is hereby reversed, and that the cause be remanded for a new trial.

*Reversed and remanded.*

---

sec. 495; McArnis v. McIntyre, 1 App. C., sec. 514; Smith v. McGehee, 1 App. C., sec. 940; Winn v. Sloan, 1 App. C., sec. 1107; Walker v. Simkins, 2 App. C., sec. 70; T. & P. Ry. Co. v. Wheat, 2 App. C., sec. 166; T. & N. O. Ry. Co. v. Oates, 2 App. C., sec. 618; G. C. & S. F. Ry. Co. v. Witt, 2 App. C., sec. 774; M. P. Ry. Co. v. Teague, 2 App. C., sec. 780; Henry v. Fay, 2 App. C., sec. 834; Ross v. Hawley, 3 App. C., sec. 107; Land Co. v. Jones, 3 App., sec. 271; McDannell v. Horrell, 1 U. C., 524.

**Note 28.**—Austin v. Andrews, Administrator, p. 447.

The Legislature may regulate the remedy, both as to pre-existing and subsequent rights, as to them may seem proper; and a statute changing or modifying it is not unconstitutional and does not impair obligation of contracts, unless it fails to provide an adequate remedy.  Austin v. White, Dal., 434; Selkirk v. Betts, Dal., 471; Catlin v. Munger, 1 T., 598; Gautier v.

# JUNE TERM, 1843.

---

### No. I.

#### BARTHOLOMEW MANLOVE v. THOMAS KINNEY.

##### (See Note 43.)

*Appeal from Bastrop.*

HEMPHILL, CHIEF JUSTICE.—In this case no notice of appeal was given in the court below, nor was any bond filed.

There is then no foundation for the exercise of the jurisdiction of this tribunal, and the case is accordingly ordered to be removed from the docket.

### No. II.

#### WM. H. McGILL AND WIFE v. A. C. DELAPLAIN,

##### ADMINISTRATOR, ETC.

##### (See Note 44.)

*Appeal from Bastrop.*

BAYLOR, JUSTICE.—Rebecca Pincena while a feme sole filed her petition in the probate court for Bastrop County, alleging that A. C. Delaplain, administrator of William Brisbone, deceased, was indebted to her in the sum of $738.16, for and on account of work and labor performed by her for the said William Brisbone, deceased, in his lifetime, at his special instance and request, and for money had and received by him to her use, and so forth.

Upon an investigation of the matter in the probate court, she recovered a judgment and decree for the sum of $441.30 against Delaplain, administrator, as aforesaid. From which judgment and decree the said Delaplain appealed to the District Court for Bastrop County.

On the trial of the case there, the said Rebecca Pincena, who had then intermarried with Wm. H. McGill, proved by Andrew Mays, a witness, that there was a balance due the plaintiff for work and labor done and performed by the said Rebecca for the said Brisbone in his lifetime. They also produced in evidence an account, stated to be found among the papers of William Brisbone, deceased, containing a statement of moneys received by him as guardian for the said Rebecca upon an attempted settlement in the State of Mississippi, from whence the said Brisbone, deceased, removed to Texas, bringing with him the said Rebecca, who was

---

Franklin, 1 T., 732; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 348; Grassmeyer v. Beeson, 13 T., 524, 529; Bender v. Crawford, 33 T., 745, 752; Moore v. Letchford, 35 T., 185, 214; Bentinck v. Franklin, 38 T.,

then a minor. The foregoing evidence being submitted to the jury, the defendant by his counsel moved the court to nonsuit the plaintiff and dismiss the case; which motion was sustained by the court below, and judgment rendered accordingly against McGill and wife; to reverse which they prayed an appeal to this court, and object here, that after the introduction of testimony showing a strong presumption in favor of the plaintiff's right to recover, it was not competent for the judge below to take the case from the jury and dismiss the petition or nonsuit the plaintiff on the ground of insufficiency of proof, etc.

We think the objection well taken. At a former term of this court, in the case of Guest v. Guest, we decided that the district court had no power to compel the party to take a nonsuit; we see no good reason to depart from this decision.

It has been argued by the counsel for the appellee that at the time the judgment of the court below was rendered, the civil law prevailed, and by that law, the judge below had the power to nonsuit the plaintiff. It is true where the civil laws prevails, there are cases to be found' to that effect. But by our Constitution and laws we think the trial by jury was secured to the plaintiffs if they chose to persist in it. The judgment and decree of the court below must therefore be set aside, annulled and reversed, and a new trial awarded in the court below.

*Reversed and remanded.*

### No. III.

### ALLCORN, ADMINISTRATOR, ETC., v. SWEENY.

#### (See Note 45.)

*Appeal from Brazoria.*

MORRIS, JUSTICE.—Allcorn, as administrator of one Caples, deceased, sues Sweeny on a promissory note for $3460.50. Sweeny in his answer admits the execution of the note, but alleges that it was in consideration of the sale of a tract of land by Caples in his lifetime to him, Sweeny. That a bond was executed by Caples to him conditioned to make a title to him in three months from the 10th day of March, A. D. 1837, under the penalty of $30,000 in case of failure therein. That Caples fraudulently represented himself to be the owner of said land, when in fact one-eighth of said land was claimed by one John W. Cloud; that he frequently demanded title from said Caples during his lifetime, and from his administrator, Allcorn, since his death, which they failed and neglected to make. That he is fearful he will be disquieted in the possession of all the land. He therefore pleads in reconvention and claims

458; Wood v. Welder, 42 T., 396; Treasurer v. Wygall, 46 T., 447; McLane v. Paschal, 62 T., 102; Ward v. Hubbard, 62 T., 559; Collins v. Warren, 63 T., 311; Parker v. Buckner, 67 T., 20; Boone v. Chambers, 82 T., 480; Odum v. Garner, 86 T., 374; B. and L. Assn. v. Newman, 86 T., 380; Standifer v. Wilson, 93 T., 232; League v. State, 93 T., 553; State v. Williams, 10 T. C. A., 346; Insurance Co. v. Shearman, 17 T. C. A., 456; T. M. Ry. Co. v. Telegraph

$30,000 penalty under the bond. The jury found a verdict for the defend-
ant $14,000, for which amount judgment was rendered; on which judg-
ment an appeal was taken to this court.

From the statement of facts we ascertain that a bond such as is de-
scribed in the answer was executed by Caples. That Caples died previous
to the expiration of the term of time mentioned in the bond. The value
of the land was proven to be from three to five dollars per acre. It was
also proven that in the fall, previous to the commencement of this suit,
a company of men agreed to purchase 300 acres of this land from Sweeny
for $6000, but that the contract was not consummated in consequence of
Sweeny's inability to make them a satisfactory title.

The land was to be purchased in order to erect a town, and witness
thought if the town had been erected, the value of the land adjacent
would have been much enhanced. A deed executed by the administrator
for four-fifths of the land was tendered Sweeny at the term of the court
when the cause was tried, and refused by Sweeny. A letter on file in the
records of the court, in a cause pending between Allcorn, administrator
of Caples, as plaintiff, and John W. Cloud, from Cloud to Allcorn, was
introduced to show that a demand had been made of the administrator.
The judges charged the jury "that it was competent for the intestate to
bind himself, his heirs, etc., in stipulated damages to make a title to the
land, and that the death did not lessen the obligation and the necessity
of complying with the terms of the obligation." A motion for a new
trial was made and withdrawn, in order to a more speedy determination
of the case in this court. The counsel in argument concede that the bond
on which the plea in reconvention is based was an ordinary penal bond,
and that the amount therein specified was not claimed as stipulated or
liquidated damages, but only such damages were sought by the plaintiff
in reconvention and found by the jury as were actually sustained; the
measure whereof would be the value of the land as disclosed by the testi-
mony. Several questions have been raised as to the necessity of a demand,
the time for such demand, and of whom it would be made; which we do
not deem it necessary to decide in this cause. We shall therefore proceed
at once to that point which is decisive of the case in its present attitude.
It appears that a contract of sale was made between Allcorn's intestate
(Caples) and Sweeny, for certain lands, and the bond above mentioned
given by Caples to Sweeny. Caples' administrator sued Sweeny for the
purchase money, and Sweeny recovered in damages for the failure of
Caples to perform the condition of his bond. Under the sale the posses-
sion of the land was delivered to Sweeny. The land was his, would de-

---

Co., 24 T. C. A., 198; Etter v. M. P. Ry. Co., 2 App. C., sec. 61; Moore v. State,
20 T. App., 280; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Williams
v. Bradley (T. C. A.), U. R. C., 1902. Where a statute gives a new remedy,
not repugnant nor inconsistent with the old remedy, the latter is not taken
away, and parties have their election between the two. Thouvenin v.
Rodrigues, 24 T., 468; Etter v. M. P. Ry. Co., 2 App. C., sec. 58; M. P. Ry. Co.
v. Parkhurst, 3 App. C., sec. 159.

**Note 29.**—Hirams & Donaho v. Coit, p. 449.
[1] Omission of obligor's name in body of bond is an immaterial defect.

scend to his heirs, and be devisable by his will. The powers and rights of the vendor, or those claiming under him, over and to the land, has passed forever to Sweeny. With Sweeny, however, under the condition of the bond, rested the election, in case of inability, failure or neglect on the part of the obligors in the bond, to make a good and sufficient title; either to enforce that title through the medium of the courts, or to rescind the contract and recover his damages. He elects to pursue the latter course, and refusing the deed for four-fifths of the land tendered him by the administrator, demands at the hands of a jury his entire damages. There is no plainer requisition of law, as well as reason and justice, than that where a party on such a contract as the bond under consideration seeks to exact a penalty for the nonperformance of a particular act, that all things must be restored, as nearly as may be, to their original position, before such penalty can be enforced. Has this been done by Sweeny, the plaintiff in reconvention? He admits himself to be in possession of the land; he refuses a title to four-fifths thereof; he shows no eviction, or attempt at eviction by the vendor, his heirs, or administrators; he shows no outstanding title in any other person; he makes no tender of the premises, but holds on to his possession and still claims and obtains, at the hands of the jury, full damages to the value of the land proven, and even consequential damages as to a part. This verdict then, under these circumstances, is at once illegal, exorbitant and oppressive, and can never be permitted to stand unreversed. It is therefore ordered that the judgment of the court below be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

## No. IV.

### JESSE BENTON v. ELI WILLIAMS.

*Appeal from Harris County.*

JACK, JUSTICE.—Eli Williams sued Jesse Benton in the District Court of Harris County to recover damages for an assault and battery alleged to have been committed by Benton on Williams. The defendant filed two pleas by way of answer to the plaintiff's petition. First, justification; and secondly, that the defendant ought not to be held to answer the complaint of the plaintiff in this cause, because "Eli Williams is of African descent, and not entitled by law to maintain his action, except by

Cook v. Crawford, 1 T., 9; San Roman v. Watson, 54 T., 254; Baldridge v. Penland, 68 T., 441; Braidfoot v. Taylor, 1 App. C., sec. 175; Babbitt v. Finn, 101 U. S., 7; Weis v. Chipman, 3 T. C. A., 106. If the names are only recited in the body and not subscribed, the bond is void. Pevito v. Rodgers, 52 T., 581.

2 Answers not responsive to interrogatories should be stricken out on objection. Rev. Stats. 1895, art. 2291. Lee v. Stowe, 57 T., 444; M. P. Ry. Co. v. Ivy, 71 T., 409; Parker v. Chancellor, 78 T., 524; Crosson v. Dwyer, 9 T. C. A., 482; Pioneer Savings and Loan Co. v. Peck, 20 T. C. A., 111.

his guardian or next friend." To this last plea the plaintiff demurred. The demurrer was sustained by the judge who tried the case below. The parties then went to trial on the other plea. There was a verdict and judgment for plaintiff, from which the defendant appealed. He now seeks to reverse the judgment of the district court on the ground of error in sustaining the plaintiff's demurrer to his plea.

This is the only question that we are required to decide. The case has been submitted to us without argument or brief, and we have been unable from the books in our reach to find any authority to sustain the principle of law as contended for in defendant's plea. The only grounds upon which we suppose the counsel for the defendant could have based an argument are to be found in the Constitution, in which is to be found the following: "The descendants of Africans shall not be permitted to remain permanently in the Republic without the consent of Congress;" nor are such persons entitled to the rights of citizenship. But we can not conclude that because they are not entitled to some particular privileges, they are, while actually residing in our country, out of the pale of the protection of the law, and that injuries and aggressions may be wantonly committed on their persons and property, and that when they ask for a redress of such grievances, they are to be told that the courts of justice are closed against their complaints. We can not, by sustaining the defendant's plea, establish a principle which we regard against law, contrary to the spirit of our institutions, and in violation of the dictates of common humanity. The judge below correctly sustained the demurrer to the defendant's plea. The judgment of the district court must be affirmed. We have declined giving an opinion on the appellee's motion to dismiss, because we thought the ends of justice would be as well obtained by a decision on the merits, which was also submitted.

*Affirmed.*

## No. V.

### JACOB GARRET V. JOHN D. NASH AND WIFE.

*Appeal from San Augustine.*

HEMPHILL, CHIEF JUSTICE.—Ellen A. Nash, being joined by her husband, instituted suit in the court of probate for the county of San Augustine against Jacob Garret, the appellant in this court, and others named in the petition, to recover the portion of the estate of her former husband, Claiborne Garret, deceased, to which by law she might be enti-

---

**Note 30.**—Whiting v. Turley, p. 453.

By the Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 262), Rev. Stats. 1895, art. 1181, providing that proceedings in civil suits "shall be by petition and answer," and providing against adoption of common law system of pleading, was only intended to designate a system of pleading and not to prescribe rules. It should be strictly construed. Underwood v. Parrott, 2 T., 168. The pleader, under our system, is not confined to the common law counts. The rules of courts of law and chancery, found in elementary treatises on pleading, are not conclusive authority in our system. Caldwell

tled.   When the case came up for trial in the district court, the facts.
being agreed upon and submitted to the court, it was decided that the
said Nash and wife were entitled to one-fourth of the estate of which
the said Claiborne Garret died seized and possessed, after the payment of
all just demands against said estate; provided the said fourth part of said
estate did not exceed one hundred pounds of gold, or the value thereof.
From this judgment an appeal was taken to this court.   In the argument
of counsel our attention has been directed almost entirely to that portion
of the statement of facts in which the acknowledgment is made, that
Claiborne Garret departed this life in the month of May, 1837, leaving
the said Ellen A., his wife, destitute of any estate or property; and that
the said Ellen A. intermarried with the said John D. Nash in the month
of August following.

Our inquiries will then be reduced to the narrow compass of ascertain-
ing whether, under the circumstances of the impoverishment of the
widow, she was entitled to the fourth part of her deceased husband's
estate, notwithstanding her remarriage within the period of twelve
months after his death.

In Partida 6, Title 13, Law 7, it is declared, that men are sometimes
content to marry women who are poor and without a dowry; it is there-
fore but just and proper that since they loved and honored them through
life, they should not leave them destitute at their death.   The ancient
sages have therefore thought fit to ordain, that if the husband should not
leave such wife the means of living independently, and she should not
possess them herself, then she may inherit one-fourth of the estate, not-
withstanding he should leave children; but such fourth part ought not
to exceed one hundred pounds of gold, however great may be the estate
of the deceased.   It is unquestionable, then, that under the wise and
beneficent provisions of this law, the destitute widow is entitled to the
one-fourth of her deceased husband's estate, subject only to the limitation
that it shall not exceed one hundred pounds of gold.   But it is contended,
that notwithstanding the salutary guarantees of this law securing the
widow (who during the continuance of the matrimonial union has been
surrounded by comforts) from indigence and want, yet she forfeits all
its benefits by marrying a second time within the first twelve months of
her widowhood, or even during the course of her life.   To support the
position assumed by the appellant, reference is made to the 3d Partida,
title 11, Law 3, and to a passage in the works of Febrero.   In the Partida
it is said that the secular law prohibits the widow from marrying within
one year after the death of her husband, and imposes a penalty, upon
those who marry before that time, of infamy; and that she loses the arras

---

v. Haley, 3 T., 317; Mays v. Lewis, 4 T., 38; Holman v. Criswell, 15 T., 394;
Payne v. Benham, 16 T., 364; Flores v. Maverick, 24 T., 526.

**Note 31.**—Hart v. King, p. 456.

Action of court in granting or refusing continuances will not be revised
unless it is plain that injustice has been done.   Ward v. Boon, Dal., 561; Hipp
v. Bissell, 3 T., 18; Hipp v. Huchett, 4 T., 20; Ayers v. Duprey, 27 T., 593;
Peck v. Moody, 33 T., 84; Addington v. Bryson, 1 App. C., sec. 1292; Texas
Express Co. v. Scott, 2 App. C., sec. 72.   Where the allowance or refusal **of**

and other donations made her by her deceased husband, and all other things which he had left her by will, etc. The passage from Febrero is presumed to be the following: Hay tres casos no obstante enque pueda perder este derecho; Primero, si la vinda vive dishonestamente; secgundo, si secasan; Tercero, si se que dan usufructuarios: Febrero, vol. 1, part 1, cap. 1. ["There are three cases in which she loses this right (the marital fourth). If she leads a disgraceful life; second, if they are married; third, if they are usufructuaries."] If the law as expressed in the Partidas, remained still of force, and the comment of Febrero were not explained with other portions of his own works, and also by other commentators, the conclusion that the judgment of the court below was erroneous would be inevitable. But on a careful examination of the limited number of books and authorities on the subject of Spanish laws and jurisprudence to which we have access, we are of opinion that the law is repealed, and the passage in Febrero contradicted, or perhaps explained more fully by himself and other commentators of established authority. The Recopilacions are not within the reach of this court; and we are compelled to decide upon the provisions of the laws of Spain, not from a personal examination, but upon the authority of text-writers and commentators. On application then to the only attainable sources of information, we find in the Institutes of the Civil Law of Spain by Aso and Manuel, that the above law embraced in the Code of Partidas, which prohibited widows from marrying within a year after the death of their husband, has been annulled, and the civil penalties incurred thereby abrogated. See 1 White's Recop., p. 47.

On the passage which has been cited from Febrero it has been strenuously urged that should a widow ever marry again after the death of her husband, the marital fourth to which otherwise she was entitled would be forfeited. But subsequent comments on the same author, sanctioned, enlarged and modified by other writers, authorize us to conclude, that under the laws in force at the accrual of the rights of appellee, where the widow married a second time, whether before or after the first year of her widowhood, she lost the legal title to but enjoyed the usufruct of the *marital fourth* during her life, and this only when the husband left children at the time of his death; for otherwise it became entirely her own.

In the first volume of Febrero, Nov., p. 425, the author says in substance that poor widows, the children by inheritance from the father being rich, are entitled to a fourth part of the husband's goods, provided the same does not exceed one hundred pounds of gold. This right has no

the continuance is within the discretion of the court a very clear case of abuse of discretion must be shown to authorize a reversal. Lewis v. Williams, 15 T., 47; Byne v. Jackson, 25 T., 95; Baldessore v. Stephanes, 27 T., 455; McMahan v. Busby, 29 T., 191; Wiggins v. Fleishel, 50 T., 57; Allyn v. Willis, 65 T., 65; M. P. Ry. Co. v. Christman, 65 T., 369; Guy v. Metcalf, 83 T., 37; T. & P. Ry. Co. v. Hall, 83 T., 675; Hannah v. Chadwick, 2 App C., sec. 518.

**Note 32.**—Fulton v. Craddock, p. 458.

As a general rule, an appellate court will not disturb a verdict if there is any evidence to support it. French v. Wall, 2 T., 288; Edrington v. Kiger, 4 T., 89; Shackelford v. Wheeler, 7 T., 553; Cheatham v. Riddle, 8 T., 162;

existence in three cases, viz: 1. Where the widow lives licentiously. 2. Where she is married a second time. 3. Where she remains the usufructuary. Where she marries a second time before or after the year of widowhood, she will lose the (propeidad) legal title of the property belonging to her for her marital fourth, and it will be transmitted to the heirs of the husband; but she will, during life, have the usufruct of the property. It will be observed that the author in express terms makes no distinction between the cases of the widow's marrying within or after one year from the death of her husband; the presumption then is irresistible that, at the period when that commentator wrote, no such distinction existed in the laws of Spain. Let us also examine into the full extent of the author's position; for although the words "heirs of the husband," in the latter part of this quotation, are general terms and would ordinarily embrace all persons capable of inheriting the property of the deceased, yet comparing together the separate portions of this section, I can not perceive that the established rules of construction would be violated by limiting the words "heirs of the husband" to his children. The author only presents the case where the children are rich and the widow is poor; no allusion is made to the circumstance of the husband dying without children; and since such a condition of things does not appear to have been in the contemplation of the writer, the terms employed could not properly be extended to include persons not within the scope of his consideration. If this be the proper construction of the remarks of Febrero, they have no application to a case where the widow marries again, their being no children of the former marriage. We are not, however, left to speculate as to what the law is or should be under such a state of facts. According to some later authorities, the fourth part of the husband's property under such circumstances belongs entirely to the widow. Sala, in the Glustra Cion del Derecho Real de Espana, lib. 11, title 8, 2d vol., p. 61, Mexican edition of 1832, after describing the property (including the marital fourth) which the surviving partner of the matrimonial community is bound to reserve in favor of the children of the anterior marriage, so that although the survivor enjoys the usufruct, yet the goods can not be hypothecated or disposed of, then proceeds to say that this obligation to reserve (the legal title) ceases when there are no children in existence at the time of the death of the partner whose duty it is to do so; unless there be descendants of the children in whose favor the obligation will still subsist. The obligation also ceases if the dying partner consent that the survivor shall again marry, or if the children who

Russell v. Mason, 8 T., 226; Bridge v. Ballew, 11 T., 269; Latham v. Selkirk, 11 T., 314; Oliver v. Chapman, 15 T., 400; Scranton v. Tilley, 16 T., 183; Gammage v. Trawick, 19 T., 58; Baker v. Clepper, 26 T., 629; McGloin v. Vabderlif, 27 T., 366; Ward v. Bledsoe, 32 T., 251; Linney v. Peloquin, 35 T., 29; Simmonton v. Forrester, 35 T., 584; G. H. & S. A. Ry. Co. v. Bracker, 59 T., 71; Flannagan v. Pearson, 61 T., 302; Hanrick v. Dodd, 62 T., 75; Hamman v. Willis, 62 T., 507; H. & T. C. Ry. Co. v. Lee, 69 T., 556; Stitzle v. Evans, 74 T., 596; Western Union Telegraph Co. v. Jones, 81 T., 271; Blackburn v. Knight, 81 T., 326; G. C. & S. F. Ry. Co. v. Johnson, 10 T. C. A., 254; T. M. R. Co. v. Crowder, 25 T. C. A., 536; Burns v. M. & P. Oil Co., 26 T. C. A., 223; Lichenstein v. Lowenstein, 2 U. C., 382; Giltner v. Waters, 2 U. C., 513; Vance

are to derive the profit from the reservation give their consent. In such cases the surviving partner would retain the legal title, which otherwise would be lost by the new marriage. In a late work entitled the "El Diccionario de Legislacion," under the term "cuarta marital," we find the rules of law applicable to this subject, expressed in positive and distinct terms. The term "cuarta marital" is defined as follows. "El derecho que tiene la vinda a la cuarta parte de los bienes de sudifunto marido en el caso de quedar pobre sin dato, legado, ni otros bienes can que alimentarse. La cuarta marital corresponde a la vinda hasta la cantidad de cien libras de oro (102,705 reales y 30 maravedis vellon) aun cuando queden higos de este matrimonio, aun cuando con su trabajo pueda janar el sustento, aun cuando adquiera algunos lienes despues de la muerte de su marido, aun cuando su marido cleque et quinto, si este no alcamza para sus regulares alimentos, tanto en el caso do que el marido habiere hecho testamento como en el de que habiere muerto intestado, pues es una denda legal a cuyo payo estan sujitos todos los bienes del difunto. Pasando la vinda a segundas nuccias, esta obligada a reservar a los hijos la propriedad de la cuarta y gozara' solamente a su usufruto, mientras viva; pero a falta de hijos la hara suga enteramente." Sc. p. 156.

["The right which the widow has to the fourth part of the property of her deceased husband, when she is poor, without any dowry, legacy, or other goods with which to support herself. The marital fourth is due to the widow until it amounts to one hundred pounds of gold (102,705 reales and 30 marevedis vellon) although there may be children of the marriage; although she could with her labor support herself; although she may have acquired some property since the death of her husband; although her husband may be bequeathed to her the fifth, if this were not sufficient for her accustomed alimony; as well also when the husband shall have made a will, as when he shall have died intestate; since it is a legal debt, to the payment of which is subjected all the property of the deceased. The widow being married the second time is under obligation to reserve to the children (the propeidad) legal title of the fourth, and shall enjoy only the usufrust as long as she may live; but on failure of children, it shall become entirely her own."—Sc., 156.] In neither the works of Sala nor in the "El Diccionario de Legislacion" do we find any distinction drawn between the cases of remarriage within or after the first year of widowhood. From an examination of the above authorities we are authorized to consider the following as established principles and rules in Spanish jurisprudence, viz: That the prohibitory and final law forbidding marriages within one year from the death of the

v. Saathoff, 2 U. C., 658. Though the evidence is conflicting. Hall v. Hodge, 2 T., 323; Legg v. McNeill, 2 T., 428; Perry v. Robinson, 2 T., 490; Cotton v. Campbell, 3 T., 493; Green v. Hill, 4 T., 465; Carter v. Carter, 5 T., 93; Davidson v. Edgar, 5 T., 492; Cunningham v. State, 5 T., 440; Chevallier v. Brewer, 6 T., 398; Coles v. Perry, 7 T., 109; James v. Wilson, 7 T., 230; Horton v. Reynolds, 8 T., 284; Long v. Steiger, 8 T., 460; Stewart v. Hamilton, 19 T., 96; George v. Leonard, 19 T., 150; Cummins v. Rice, 19 T., 225; Montgomery v. Culton, 23 T., 156; Anderson v. Anderson, 23 T., 639; Baldridge v. Gordon, 24

husband, is annulled and reversed. 2. That where there are children in existence of the anterior marriage, the poor widow on her marriage will only enjoy the usufruct of the fourth part of her deceased's husband's property; but where there are no children of the former marriage, nor their descendants, the legal as well as the equitable title to the fourth vests in the widow and it becomes entirely her own.

This fourth must not exceed one hundred pounds of gold, and this is computed to amount to 102,705 reales and 30 maravedis vellon.

It may well be doubted whether the widow be not entitled to deduct the fourth from the whole of the property of the deceased husband, and whether the judgment of the court below be not erroneous, so far as it orders the award to the widow of the fourth only of the balance of the estate remaining, after the payment of all just claims against the same. But as this objection was not raised in argument, and as we have neither the means nor the time to investigate difficulties which have not presented themselves to the counsel, we will not take the question into consideration.

These remarks are made in order that this point may not be considered as concluded, should a controversy similar to the present ever arise for adjudication.

It is ordered, adjudged and decree that the judgment of the court below be affirmed, and the appeal dismissed at the costs of the appellant.

*Affirmed.*

## No. VI.

### PHILLIP WEPPLER v. ANN McMILLAN.

*Appeal from Robertson.*

OCHILTREE, JUSTICE.—We find on an examination of the transcript in this case that there was a finding by the jury impaneled to try this cause, but no judgment was entered thereon. This court has more than once decided that it can not take jurisdiction of a case in which there has not been a definitive judgment rendered in the court below. The appeal must therefore be dismissed at appellant's cost.

*Dismissed.*

---

T., 288; Howard v. Ray, 25 T., 88; Young v. Read, 25 T. Supp., 113; Adams v. George, 25 T. Supp., 374; Ranger v. Harwood, 39 T., 139; Robinson v. Davenport, 40 T., 333; Tarkington v. Brousard, 51 T., 550; Guerrin v. Patterson, 55 T., 124; Zapp v, Michaelis, 58 T., 270; Owens v. M. P. Ry. Co., 67 T., 679; Howard v. Kopperl, 74 T., 494; Mutual Life Insurance Co. v. Hayward, 88 T., 315, 327; Adkinson v. Garrett, 1 App. C., sec. 46; Wilson v. Green, 1 App. C., sec. 99; Mitchell v. Dallas City Gas Light Co., 1 App. C., sec. 133; Viviola v. Kuezek, 1 App. C., sec. 634; Faulkner v. Warren, 1 App. C., sec. 663; Wisson v. Baird, 1 App. C., sec. 712; G. C. & S. F. Ry. Co. v. Holt, 1 App. C., sec. 839; Booth v. Case, 1 App. C., sec. 1029; Texas Express Co. v. Dupree, 2 App. C., sec. 319; Duffard v. Herbert, 2 App. C., sec. 612; Paris Gas Light Co. v. McHamm, 2 App. C., sec. 652.

**Note 33.**—Ballard v. Rogers and Ward, p. 460.

Injunction will not lie to enjoin execution, unless all legal remedies have been exhausted. Clegg v. Darragh, 63 T., 357; Gillis v. Rosenheimer, 64 T.,

## No. VII.

### REPUBLIC OF TEXAS v. LEWIS GOODWIN.

*Appeal from Bastrop.*

OCHILTREE, JUSTICE.—Goodwin was indicted at the fall term, 1839, of the District Court of Bastrop County, for knowingly permitting the game of faro, a banking game, to be dealt in his house, contrary to the statute, etc. He was afterwards tried by a jury, who brought in a verdict of guilty.

The indictment and proceedings in the case were certified to this court by the presiding judge, as presenting questions of novelty and doubt.

After a careful investigation of the record, we see nothing which requires our interference, and are of opinion that the judgment of the court below be in all things affirmed.

*Affirmed.*

## No. VIII.

### WESCOTT v. MENARD & CO.

#### (See Note 46.)

*Appeal from Galveston.*

BAYLOR, JUSTICE.—Menard & Co. sued Wescott in the court below for the recovery of $401.57, due by promissory notes; and obtained a judgment against him for that sum in the following words, to wit:

"This day came the parties by their attorneys, and the defendant withdraws his plea and says nothing in bar cr preclusion of the plaintiff's action. It is therefore considered by the court that the plaintiff recover of the defendant," etc.

To reverse which this writ of error is prosecuted. The counsel for the plaintiff urges four grounds for reversing the judgment:

1. No citation appears to have been issued.

2. The record shows no service of writ or petition, nor acknowledgment of service of either.

3. Nor does it exhibit (except by implication in the very judgment purporting to be founded on it) any appearance by defendant below.

4. The record makes no exhibition of the note sued on and described in the petition, and furnishes no proof wherewith the allegations of the plaintiff are at all supported, or upon which the judgment was or could be legally based.

---

243; Kennard v. Mabry, 78 T., 151; T. M. Ry. Co. v. Wright, 88 T., 346; Cook v. T. & P. Ry. Co., 3 T. C. A., 145; Texas Land and Mortgage Co. v. Worsham, 5 T. C. A., 245; H. E. & W. T. Ry. Co. v. Ellison, 14 T. C. A., 706.

The points thus presented will be briefly considered. The first, second and third errors assigned may well be considered together. They in substance object that copies of the citation and petition were not served on Wescott, and yet proceedings were had and judgment rendered against him.

This objection would be deemed fatal, unless it is cured by his appearance (without service of the process). But the record states that he appeared by attorney, withdrew his plea, and said nothing in bar or preclusion of the right of Menard & Co. to recover against him. We can not falsify the record, and are therefore bound to take it that Wescott appeared and consented to the judgment.

A voluntary appearance supersedes the necessity of service of process, which is intended to procure an appearance; the want of service can not therefore be urged in this case as error.

The fourth error assigned raises the question whether this court ought to affirm the judgment of a court below, when the record here does not show a copy of the note sued on. If the judgment was in fact obtained against Wescott without producing the note on the trial below, he ought then to have objected; but the record shows no such objection. We deem it now too late for him to do so, as we must suppose the district court would not have given judgment unless the judge below had the necessary proof to have authorized it.

But for the sake of a correct practice we think it proper to add that wherever written instruments of any kind are made the foundation of an action, such instruments ought always to be produced on the trial and regularly filed at the time the judgment is obtained. Should they afterwards be wanted for other purposes, a motion ought to be made to the court for permission to withdraw them by leaving copies on file, and this motion should appear on the records of the court. Judgment affirmed.

*Affirmed.*

## No. IX.

### R. H. BRADLEY v. JOHN McCRABB.

(See Note 47.)

*Appeal from Victoria County.*

HEMPHILL, CHIEF JUSTICE.—John McCrabb, the plaintiff in the court below, presented his petition to the District Court for the County of Victoria at its spring term, 1841, stating that in the month of January, in the year 1838, he was duly elected to the office of clerk of the

Note 34.—Hamilton v. McKensie, p. 461.

Appellate court is without jurisdiction when the appeal is not taken in time. In such cases the appeal will be dismissed. Lockhart v. Lockhart, 1 T., 199; Hicks v. Harlan, 1 T., 560; State v. Croner, 2 T., 492; Keece v. Swift, 3 T., 111; Urbane v. Johnson, 3 T., 191; Reynolds v. Dechaumes, 22

district court for the said county; that he was duly qualified; exercised the duties and enjoyed the immunities of the said office until the 1st of February last; when Robert H. Bradley, the appellant in this court, by virtue of a pretended election claimed to be the lawful incumbent of said office, and that in accordance with the advice of the chief justice of said county, and the desire of his honor the district judge, and in order to the due administration of justice, and that the courts might be held without interruption, he had handed over the books, papers and records of said court and said office to the said Bradley, but denied that he had by that act transferred the rights, the perquisites, immunities, and right to said office; but retained and reserved the same to himself, until the full end and term of four years should elapse from the period of his election. He prayed for a writ of mandamus requiring the said Bradley to deliver to the said petitioner the said office with all its immunities, records, books, papers, etc., or show cause to the contrary. The petition was sworn to on the 21st of April, and on the same day there was entered of record in the said court an order commanding the said Bradley to deliver up to the said McCrabb the said office, with the immunities, books, papers, records, etc., within one day, or otherwise to show, if he could, any sufficient cause or warrant to the contrary. On the following day the respondent returned, or showed for cause why he ought not to be required to deliver up to the said plaintiff the said office, with the books, records, immunities, etc., and why a peremptory mandamus should not issue:

1. That the said plaintiff had other remedies at law.

2. The respondent had not good, sufficient, legal and timely notice of the suit of the said McCrabb.

3. That the said McCrabb was only elected (if he ever was legally elected, which defendant denied) to fill an unexpired term terminating on the 1st day of February, 1841.

4. That at an election held in conformity with law on the 1st day of February, 1841, to fill the said office for the said county the said respondent received the largest number of votes for the said office; that he had been duly commissioned as clerk of the said court by the President of the Republic; and that by virtue of the authority thus vested in him he has taken possession of the records, books and papers of the said office; and has continued ever since in discharge of the duties of the same; and prays for a rescission of the order entered of record as aforesaid.

The right of trial by jury was waived, and the cause being submitted to the court, a peremptory mandamus was ordered to be awarded, commanding respondent to yield up to the plaintiff the office and franchise

---

T., 116; Hall v. Claiborne, 27 T., 217; House v. Bennett, 40 T., 346; Wilson v. Adams, 50 T., 5; Warren v. Wooters, 52 T., 568; Mills v. Paul, 1 T. C. A., 419.

**Note 35.**—Republic of Texas v. Young, p. 464.

A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commissioner v. Ball, Dal., 366; Land Commissioner v. Reily, Dal., 381; Land Commissioner v. Walling, Dal., 524;

of clerk of the said court with all the immunities, books, papers, archives of said office, to be used, held and kept by the said McCrabb until the full end and expiration of his office, viz., for four years from and after the 10th day of January, 1838.

From this decision the respondent has appealed. As no argument has been made in this cause, nor brief offered by counsel, we will proceed to consider the objections to the judgment of the court below in the order of their arrangement in the return of the respondent.

And first that the plaintiff was not entitled to this writ, he having other remedies at law. As this application was subsequent to the passage of the statute of this Republic requiring judges, in issuing writs of mandamus, to observe the rules which govern such writs at common law as modified by the statutes of this Republic, we will proceed to consider whether at common law mandamus would be the appropriate remedy of the wrong complained of in this controversy. The writ of mandamus, according to the theory of the British Constitution and of the common law, is deemed a prerogative writ of an extensively remedial nature, and has been figuratively styled "one of the principal flowers of the jurisdiction of the king's bench," in which the king once sat in person, and is by legal fiction still presumed to be present. See 1 Chitty's General Practice, p. 79; Kendall v. United States, 12 Pet., 620.

Among an infinite number of other purposes to which this writ may be applied, it lies to compel the restoration or admission of anyone entitled to any office or franchise of a public nature, whether the same be spiritual or temporal, and also for the production, inspection and delivery of public books and papers. See Black. Com., p. 110; Bac. Ab. Mand.; 2 Tomlin's L. Dic., p. 512. In 3 H. and M., 1, 47, it was decided to be a proper remedy to restore to his office a clerk of a court who has been ousted therefrom by the illegal appointment of another person. See 2 Tucker's Com., p. 202. It will not only issue in cases where the party having a specific legal right has no other legal operative remedy, but where the other modes of redress are inadequate or tedious, the writ will be awarded. 3 Black. Com., p. 110; 1 S. C. (Tread. Ed.), p. 175; 4 Burr, 2044; 3 Burr, 1266. One of the reasons for the abundant caution in the exercise of this jurisdiction under the common law, and the restriction of its application to cases where there was no other legal, specific and operative remedy, was the final character of the judgment awarding the writ of mandamus; as no writ of error lay by which

Republic v. Skidmore, Dal., 581; Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority, that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T.,

it could be subjected to the revision of a superior tribunal. But under our Constitution and laws the defeated party is entitled to an appeal from any final judgment rendered in the district courts; and the jealous caution which might arise from the influence of apprehensions that remediless wrongs might be committed, can have no foundation or support in the structure of our judicial system. It is true that at common law the writ of quo warranto will lie in the name of the king or the Republic against any person or corporation, as well for the usurpation as for the nonuser or abuse of any franchise or liberty, to show by what warrant or title they claim such right or franchise. And had an information in the nature of a quo warranto been filed in this cause, we will not say that the same could not have been sustained; but where the object is not only to restore to office him who has been illegally ousted, but also to cause the books, papers and archives thereof to be delivered to his possession, we are of opinion that the writ of mandamus operates a more complete and effectual remedy.

The next objection, that the respondent did not receive sufficient legal and timely notice, will be found untenable. Were the seventh section of the act establishing district courts alone consulted, we might hastily conclude that all process issued in the course of judicial proceedings must be served at least five days before the next term succeeding the issuing of said process. But when construed with other portions of the same statute, such a conclusion will be found incompatible therewith, and the provisions of the said section must necessarily be restricted to the ordinary process obtained from the ministerial officer of the court, without the intervention of judicial power. Any other construction would in a great measure paralyze judicial authority and render it too imbecile for the effectual administration of justice or the redress of wrongs. By the fourth section of said act, Congress in conformity with the provisions of the Constitution has communicated to the district courts the most high and transcendent authority in both civil and criminal matters, limited and confined only by appeal to this tribunal. The judges are in express terms empowered either in vacation or term time to grant writs of habeas corpus, mandamus, injunctions, supersedeas and all other remedial writs known to the law, not repugnant to the Constitution, returnable according to law into the Supreme Court, or either of the said district courts, as the case may be. Under other circumstances it might be profitable to inquire whether the legislators by the use of the terms injunction, mandamus, supersedeas, etc., introduced or intended to introduce all the principles and rules by which these writs are governed at common law. In Aques v. Indice, 3 Martin,

335; Byers v. Wallace, 87 T., 503. Grant is valid if the grantee in good faith intended to move his family to Texas. State v. Skidmore, 5 T., 459; Russell v. Randolph, 11 T., 460. Acts of December 14, 1837, and February 4, 1841, required applicant to prove that he did not refuse to participate in the war and that he did not assist the enemy; and if applicant's intention of remaining while in the Republic, and certainty of returning on departure, were equivocal, he was not entitled to establish claims for donations of land. Republic v. Skidmore, Dal., 581; State v. De Casinova, 1 T., 401; Thomerson

171, it was decided that the use of common law names in judicial proceedings were naturally adopted in a practice carried on in the English language, but that they should rather be considered the translation of names formerly used, than as emanations from English jurisprudence. That the words mandamus, procedendo, certiorari, prohibition, etc., sometimes employed in practice, may be considered good equivalents for incitation, evocation, inhibition; but that their adoption as words could by no rule of law or common sense be considered as having introduced the English practice itself. But however interesting might be the examination of this subject when a proper case is presented, the present controversy could not be affected by the practice in relation to remedies of a similar nature in courts deriving their jurisdiction from the civil law. By subsequent legislation, the judges were required in the issuance of the writs of mandamus to be directed by the rules which govern such writs under the common law, as modified by the statutes of this Republic. To the common law and to our statutes, then, must we apply for the decision of the question, whether the order or alternative writ of the mandamus issued in this case should have been served five days before the commencement of the term of the court, or whether the same was properly issued in term time and returned at the same term. In deciding on the proper practice to be pursued under our laws and the organization of our courts, we derive but little assistance from an examination of the practice of the common law courts in England; nor has that practice by the introduction of the common law become of force in this country, and the decisions thereon are no further binding here than as they are applicable to the structure of our courts of justice. There the terms of the courts are frequent and long continued; and the difference between the time of the test and the return of the writ varies according to the distance of the respondent from the place where the sessions of the courts are held. Here our courts are held but twice in the year. The term of many of them does not exceed six days, which is two days less than the minimum period allowed in England between the teste and return of the writ of mandamus. The dissimilarity between the organization of the English and our courts is so great that no deduction can be shown from the English practice as to the proper period of notice under our judicial establishment. The question then arises, whether on a just interpretation of our statute laws (considering the powers of the district courts and the objects to be obtained by the application of the remedy), a writ of mandamus can be returned to the same term from which it issued? This question

v. State, 8 T., 172; Russell v. Randolph, 11 T., 460; Patton v. Evans, 15 T., 363.

**Note 36.**—Thompson, Morton and Payne v. Harrison, p. 466.

Gaming and wagering contracts are invalid only when prohibited by statute or induce immorality. Dunman v. Strothers, 1 T., 89; Smith v. Brown, 3 T., 360; McElroy v. Carmichael, 6 T., 454; Kirkland v. Randon, 8 T., 10; Crump v. Secrest, 9 T., 260; Pierce v. Randolph, 12 T., 290; Norvell v. Oury, 13 T., 31; Campbell v. Reeves, 14 T., 8; Boggess v. Lilly, 18 T., 290; Connor v. Mackey, 20 T., 747; Wheeler v. Friend, 22 T., 683; Monroe v. Smelly, 25 T., 586;

will admit of but one answer. If we examine the usages of other courts where common law prevails, we will find that the rule to show cause, the alternative and peremptory mandamus have all been granted at the same term of the court. The same provision which authorizes judges to issue writs of mandamus gives authority also to issue writs of habeas corpus, requiring them both alike to be returned to the district court. It surely would not be contended that a writ of habeas corpus issued at one term of the court could not be returned until the succeeding term thereof. Such a construction would render nugatory this great instrument of human liberty, and a similar one would vitally impair the remedial efficacy of the writ of mandamus. It is the daily practice of courts to issue writs returnable to the same term, and the exercise of such power is essential to the due, prompt and vigorous administration of justice. Writs are issued for the apprehension of criminals, attachments for contumacious witnesses, and many other processes, returnable immediately, or at a day fixed in the said term. If the writ of conditional mandamus could not be returned at the same term at which it was issued, one of the objects of the adoption of that remedy, viz., the speedy attainment of justice, would be defeated; for no other mode of redress could be more tedious or protracted. The processes in mandamus are of an extraordinary nature and require the intervention of a judge, and as to the period of their return can not well be assimilated to the ordinary writs obtained from the ministerial officers of the courts; but in the absence of distinct statutory provisions, the day of return ought to be regulated by the objects to be accomplished and the usages of courts similarly situated. Nor can the exception be sustained because there was no rule to show cause and no conditional mandamus in fact issued. The circumstances of this case as developed by the evidence were peculiar.

The claimant, McCrabb, had delivered the papers and books of the office to the respondent at the request of the presiding judge, that there might be no failure in the administration of justice; it being understood that at the earliest opportunity, on proper proceedings being instituted, the right would be decided.

The respondent acted as clerk of the court, and recorded the order directing him to yield up the office, with its papers and books, etc., or show cause on the next day to the contrary. His answer shows notice of the existence of the order. Where the probable cause is manifest the court is authorized as the primary measure to issue the alternative mandamus; and as the making out of the writ in form by the respondent

---

Knight v. Gregg, 26 T., 506; Armstrong v. Parchman, 42 T., 185; Walker v. Armstrong, 54 T., 609; Seeligson v. Lewis, 65 T., 215; Floyd v. Patterson, 72 T., 202; Oliphant v. Markham, 79 T., 543; Beer v. Landman, 88 T., 450; Lewy v. Crawford, 5 T. C. A., 293; Tuckett v. Herdic, 5 T. C. A., 690; Lovejoy v. Kaufman, 16 T. C. A., 377; Henson v. Flannigan, 1 App. C., sec. 566; Fowler v. Chapman, 1 App. C., sec. 963; Donnelly v. Bank, 3 App. C., sec. 169; Stewart v. Miller, 3 App. C., sec. 292; Marx v. Elsworth, 2 U. C., 83.

Note 37.—Horton v. Jones, p. 466.

On dissolution of injunction, plaintiff is entitled to have petition continued over for final trial on merits. Hall v. Phelps, Dal., 435; Hanchett v.

and having it served on himself would have been idle and troublesome ceremony without any conceivable advantage, we can not think that on these grounds the exception for want of notice is supported. The order of procedure in suing out writs of mandamus is very clearly prescribed in 3 Black. Com., p. 111, and ordinarily it should be pursued; but the circumstances of this case and the official situation of the respondent rendered other steps than the order of the court and his notification thereof unimportant and superfluous. It has been decided that where a mandamus is sought to restore to office a clerk who has been ousted therefrom, that the person occupying the office ought to be made a party to the conditional rule or mandamus, and it ought to be served upon him that he may be warned to appear and defend his right. But if it appear from the record that he was apprised of the proceedings it will be sufficient. 3 H. and M., 1, 47; 2 Tuck. Com., p. 202. The defendant was warned of the proceeding, and can not properly allege want of notice. The next and most important question is, whether the said claimant McCrabb was entitled to hold his office for the full end and term of four years from and after the period of his election. The depopulated counties, from causes over which they had no control, were not organized nor county officers elected on the first Monday in February, 1837, as was prescribed by law; and they were specially empowered by a supplemental act passed June 12, 1837, to hold elections for county officers at such time as they might deem proper. Under the provisions of this supplemental act, an election was held on the 10th of January, 1838, in Victoria County, but the evidence whether the writs and notices of election purported that the same was to be had for a full term of office or an unexpired portion thereof was conflicting and variant. It will not be material to weigh and endeavor to reconcile the variant testimony on this point, as the important principles which are decisive of this controversy can not be affected or modified, even if it were incontrovertibly established that the election was had for an unexpired portion of the term of the office in dispute; nor can the act of the claimant in voting or being a candidate for a re-election in February, 1841, affect his rights—for if he were entitled under the laws of the land to hold his office for four years, the election to fill an office which was not vacant was a nullity, and without force and effect. Section 6, article 4, of the Constitution provides "that the clerks of the district courts shall be elected by the qualified voters for members of Congress in the counties where the courts are established, and *shall hold their offices for four years,* subject to be removed by presentment of a grand jury and conviction of a petit jury." The terms of this pro-

Gray, 7 T., 549; Fulgham v. Chevallier, 10 T., 519; Lander v. State, 12 T., 462; Hurnley v. Cook, 13 T., 586; Eccles v. Daniels, 16 T., 136; Sims v. Redding, 20 T., 386; Dangerfield v. Paschal, 20 T., 536; Edrington v. Allsbrooks, 21 T., 186; Dearborn v. Phillips, 21 T., 449; Floyd v. Turner, 23 T., 292; Baldridge v. Cook, 27 T., 555; Grant v. Chambers, 34 T., 573; Aiken v. Carroll, 37 T., 73; Hewett v. Thomas, 37 T., 520; Pullen v. Baker, 41 T., 419; Kelley v. Whitmore, 41 T., 647; McKay v. State, 44 T., 43; Gaskins v. Peebles, 44 T., 390; Bridges v. Cundiff, 45 T., 437; Watt v. White, 46 T., 338; Snow v. Nash, 50 T., 216; Texas Land Co. v. Turman, 53 T., 619; Hale v. McComas, 59 T., 484; Washing-

vision are so plain that by no admitted rules of interpretation could the tenure by which this office is held be abridged or curtailed to a shorter period than four years. There is no analogy between term of the office of the district clerk and the fixed and definite periods for the commencement and termination of senatorial offices. The senators are ordered to be classified; the seats of the first class to be vacated at the end of the first year, the second at the end of the second year, etc., in such manner that one-third shall be chosen each year. Should a vacancy occur in the seat of any one member of a class, provision is made for filling the same, but the terms of office of the entire class continue until, and can only expire at stated periods. The time at which the senatorial term commences is fixed, and whether there be one or twenty incumbents it is also fixed, that it must expire at the end of three years. But can it be inferred by any legitimate rules of deduction that the tenure by which a clerk of the district court holds his office has any dependence on or connection with the period at which a former incumbent may have been elected to the said office, or the length of time for which he may have held the same? There is nothing in the terms of the Constitution which can militate against the plain and just conclusion that the person appointed by the elective power to the office of district clerk is entitled, whensoever he may be elected, to hold the same for four years. It can not therefore be material in point of fact to ascertain whether McCrabb was elected for a less or even a greater period than the term of four years. The Constitution prescribes the tenure of his office, and under its high guarantees he could not be disturbed even by a solemn act of legislative authority, without subverting the fundamental principles of our social compact; and if his constitutional rights could not be impaired by legislative action, they surely could not be subverted by mistakes of ministerial officers ordering the election, or the misapprehension of electors as to the period of duration of the office. This is an office created and its tenure and mode of appointment prescribed by the Constitution; and when the clerk is once elected, he is in office under that instrument, and entitled to all the rights and immunities conferred thereby. State v. Syles, 1 McCord, p. 238; State v. Hutson, Id., 240.

The question whether the legislative authority can constitutionally authorize the election of a clerk for a less period than a term of four years, does not perhaps properly arise from the construction of section 47 of the act establishing the district court. That authorizes an appointment by the district judge, when the office is vacant of a clerk pro

ton County v. Schulz, 63 T., 32; Love v. Powell, 67 T., 15; Daugherty v. Gibbs, 2 U. C., 255; Wagner v. Edmiston, 1 App. C., sec. 678.

**Note 38.**—Sloo & Byrne v. Powell and Others, p. 467.

[1] Is a harsh and summary remedy and all precedent conditions must be strictly complied with. Raquet v. Nixen, Dal., 386; Fowler v. Poor, Dal., 401; Gregg v. York, Dal., 528; Sydnor v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Tetman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy, 58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Het-

tem., until a regular election shall be held.  But there is nothing in that section to justify the conclusion that the Legislature intended that a clerk, when elected, shall hold his office for a less term than the constitutional tenure.  We express no opinion as to the proper power from which the district clerk should receive his appointment or authority, as that question was not presented in this controversy.  Should any embarrassment arise from the present legislation on this subject, it will be in the power of Congress at any time to afford the remedy.  We are of opinion that the judgment below should be affirmed, and it is hereby ordered, adjudged and decreed accordingly.

*Affirmed.*

### No. X.

### RICHARD ROMAN v. JAMES A. MOODY.

#### (See Note 48.)

*Appeal from Victoria.*

HEMPHILL, CHIEF JUSTICE.—The relator, James A. Moody, in his petition states that he was duly elected clerk of the County Court of Victoria County, in the month of January, 1838, and held the said office until the 1st of February, 1841; when an election being held to fill said office contrary to law, Richard Roman was chosen the incumbent thereof, and the said Roman having applied for the records of the said office, the relator, considering that he was still lawfully in office, refused to deliver them, until being ordered and advised to that effect, that the public business might proceed without hindrance, he surrendered the said papers, books, etc., reserving, however, the right and title of said office, with all its immunities, until the full end of four years from the period of his election.  He prayed for a mandamus to compel the said Roman to deliver to him the said office with its records, books, immunities, etc., or show cause to the contrary.  The alternative order or mandamus being issued, requiring a compliance with the prayer of the petition or show within one day sufficient cause or warrant for the refusal, the respondent appeared; and it was agreed that the cause should be submitted to the decison of the court in the same manner as was the case of the district clerk (McCrabb v. Bradley), the only point of distinction between the two cases arising from the fact that one office was created by the Constitution and the other was the creature of the law. The testimony of the witnesses was in all respects the same as was given in the case of McCrabb v. Bradley, the relators, McCrabb and Moody, having been elected to the respective offices of district and

mann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwarz v. Burton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269.  No presumption will be indulged to supply defects.  City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardeman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537.  But literal exactness is not required.  Lewis v. Stewart, 62 T., 352.

county clerks on the same day. No statement of facts is sent up with this record, but reference is made to the case of McCrabb for the proof which was adduced. The court awarded a peremptory mandamus against the respondent, and an appeal was taken from the decision. As was stated in the opinion delivered in the case of McCrabb, the testimony, whether the election held in 1838 was to fill the respective offices for their entire terms or unexpired portions thereof, was variant and conflicting; the court below being of opinion that the weight of testimony was in favor of the affirmative, or that the officers were elected for a full term.

We will not enter into an examination of the evidence for the purpose of comparing the same and deciding upon the correctness of the conclusion of the court below in relation to that matter. The judgment of this court would not be modified by the establishment of the one or the other fact, as we are of opinion that the tenure of this office being prescribed by law would not be varied, extended, or diminished by any misconception of the electoral body, as to the period of duration of the office. As the Constitution has not provided for the establishment of the tenure of the office of the clerk of the county court, the law creating the office and fixing its mode of appointment and its tenure must furnish the rule for decision in this controversy. By section 8 of the "act organizing the inferior courts and defining the powers and jurisdiction of the same," page 150, Laws of Texas, volume 1, it is enacted, that there shall be elected by the qualified electors of each county on the first Monday of February next, one clerk of the county court, *who shall hold his office for the period of four years, etc.* There was no election holden in the county of Victoria to fill the office in dispute on the first Monday in February, 1837, as directed by the above law; and for the relief of this and other counties similarly situated, a statute was approved June 12, 1837, authorizing the chief justices of such counties to give notice and hold elections therein for county officers at such time as they might deem proper and in the manner prescribed by law. No allusion is made to the period or term for which the officers elected under the authority of this law shall hold their offices, and the question then arises, whether a clerk of a county court elected by virtue of this latter statute shall hold his office for the period of four years from the date of his election, or only from the space of time intervening between his election and the expiration of four years from and after the first Monday in February, 1837. The act organizing the county courts, above referred to, authorizes the clerk to hold his office for four years. It is true that an election

---

[2] At common law, the seal is an absolute requisite to the validity of a bond. Cayce v. Curtis, Dal., 403; Sloo v. Powell, Dal., 467. It is unknown to the civil law and not essential to the validity of obligations and other instruments. Cayce v. Curtis, Dal., 403; Cayce v. Horton, Dal., 405; Foster v. Champlin, 29 T., 22. The common law term "bond" has never been adopted in this State and it is not necessary for bonds to have private seals. Foster v. Champlin, 29 T., 22; Courand v. Vollmer, 31 T., 397. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 327), providing that a scroll should take the place of a seal, provided it be recognized in the body of the instrument by the person making it, the recognition was not required to be

was directed to be had for the clerk on the first Monday in February, 1837. But we do not consider ourselves justified in concluding from the terms of the law that there is prescribed a fixed period, certain as to its commencement and termination for the office in controversy.

It is simply provided that he shall hold his office for four years, and not that it shall commence and end in prescribed days, and that should a vacancy occur, elections shall be holden only to complete the unexpired portion of this defined and circumscribed end. The terms of the provision that he shall hold his office for four years are so plain that they can not be elucidated by explanation; and since they are not modified by the subsequent statute or by other provisions of the same act, we are justified in concluding that a clerk of the county court, whensoever elected, and especially when elected under the authority of the statute passed for the benefit of the depopulated counties, is entitled to hold his office by the tenure guaranteed to him by the provisions of the general law, viz., for the term of four years. For authorities in relation to the tenure of office, see 2 Wend., 266; 1 Melord, 233; Bradley v. McCrabb, decided at this term of the court. We perceive no necessity of adding further observation in relation to the tenure of the clerk's office or to the propriety of proceedings by mandamus. They are discussed at some length in the case of Bradley v. McCrabb, and do not require repetition. It is ordered, adjudged and decreed that the judgment of the court below be affirmed.

## No. XI.

### TAYLOR v. DUNCAN.

#### (See Note 49.)

*Appeal from Gonzales.*

MORRIS, JUSTICE.—A motion has been made in this case to dismiss the writ of error granted to Taylor, because the judgment which that writ was granted to revise was rendered previous to any law authorizing such writ, and after the right of appeal, under the laws existing at the time of the rendition of the judgment, had been lost by lapse of time.

The principal questions that arise in the determination of this motion are two: First, that at the time of the rendition of this judgment, was the method known to the law of obtaining a revision in a higher court of a case adjudicated in a lower? Second, whether the laws passed subsequent to that time giving additional or enlarged remedies can be

in any specific terms. The use of any words in the body from which recognition could be fairly inferred, was sufficient. Flemming v. Powell, 2 T., 225; English v. Helms, 4 T., 228; Read v. Levy, 30 T., 738. The first section of Act of 1840 was restraining, and confined to instruments for conveyance of estates of inheritance or freehold or for a term of more than five years, and the intent to seal was sufficient, if expressed in any part of the instrument not within the purview of this section. English v. Helms, 4 T., 228; Clayton v. Pridgen, 8 T., 308; Conner v. Autrey, 18 T., 427; Muckleroy v. Bethany, 23 T., 163; Muckleroy v. Bethany, 27 T., 551; Richarz v. Wolcken, 34 T., 102.

considered as applying either directly or by implication to cases which had been previously adjudicated. The judgment in this cause was rendered in November, 1839, and upon an examination of the statute law of the Republic up to that time, we find that the only means by which a cause could be transferred from an inferior to a superior tribunal in order to its revision by the latter was an *appeal;* the terms, time and manner whereof are variously modified by different provisions in those statutes. Vide 1 vol. Stats., p. 203, sec. 15; 2 vol. Id., p. 94, sec. 1. All of these provisions require the notice of appeal to be given at the term of the court at which the appeal was prayed, and time only was extended by the amendment for the filing of the appeal bond in those instances in which it was necessary that such bond should be given. That time varied from the term at which the appeal was taken, to six days subsequent to the expiration of the term of the court at which the appeal was prayed. But it is contended that we must conclude, from words and expressions in the same statutes, that Congress contemplated some other method of obtaining a revision of the decisions of an inferior by the Supreme Court than appeal. The expressions used in the statutes and referred to as raising this presumption will be found in volume 1, page 79 (statute organizing the Supreme Court), section 3; where it is said "that the Supreme Court shall have jurisdiction over and hear and determine all manner of pleas, plaints, etc., which may be brought before it from any court in this Republic, either by appeal *or other legal process,*" etc. In section 8 "the said court or any judge thereof, in vacation, may grant writs of injunction, supersedeas, and such other writs as the laws permit to the judgments and decrees of the district or county courts, on such terms and conditions as the laws prescribe in cases of appeal, etc., returnable either to the Supreme Court or before any judge of said court, as the case may require." Section 16 requires that a copy of the bond given by the plaintiff shall be transmitted, with a transcript of the record of the cause in which such appeal was taken, or *which may be taken in any other way, to the Supreme Court.*

In volume 1 (under the law organizing district courts, page 203, section 4), the judges of the district courts are authorized, in vacation or term time, to grant writs of habeas corpus, mandamus, and *all other remedial writs known to the law,* returnable according to law, either in the Supreme Court or either of said district courts, as the case may be.

Other sections of law using similar expressions might be found, but as enough have been quoted to place the argument in a fair light before

Under Act of 1840, contracts to transfer land certificates and headright claims, were not required to be under seal. Randon v. Barton, 4 T., 289; Bledsoe v. Cains, 10 T., 455. It was not necessary for an obligation to pay money, nor its assignment, to be under seal. Durst v. Swift, 11 T., 273; Jones v. Holliday, 11 T., 412; Holman v. Criswell, 13 T., 38. Nor was it necessary for a contract to sell land to be under seal. Miller v. Alexander, 8 T., 36; Holman v. Criswell, 13 T., 38; Fisk v. Miller, 13 T., 224; Eckhart v. Reidel, 16 T., 62; Martin v. Weyman, 26 T., 460; Courand v. Vollmer, 31 T., 397; Wright v. Lancaster, 48 T., 250, 256; Downs v. Porter, 54 T., 59, 64. A deed without seal or scroll was admissible in evidence to show equitable title in vendee, and deed was entitled to record under section 7 of Act of 1840, though not under seal. Miller v. Alexander, 8 T., 36; Saunders v. Hartwell, 61 T.,

us, we shall now proceed to a consideration of its force and effect. The legitimate method of construing the statute laws of any country is to view them in connection with reference to the fundamental law of that country, on which they must necessarily be based. When the statutes are silent on any subject, or when doubt or difficulties arise as to the intention of the legislators in any statutory enactment, it is the duty of the courts to look to that fundamental law as the rule of decision in the one case, and the proper method of arriving at the intention of the legislators in the other. What, then, at the time of the passage of these various statutes which have been before alluded to, was the fundamental law of the land? The answer is plain: the Constitution of the Republic of Texas and the Spanish civil law as in force in the Mexican confederacy. Upon these as a basis have our statutes been passed, and to these must we look as the guide of our decisions when the statutes are silent, or as the rule of construction when they are doubtful. By reference to that law we find that appeal is the only remedy by which a party conceiving himself aggrieved by the judgment or decree of an inferior court could obtain a revision thereof in a higher tribunal. The terms, time, and other requisites thereto are expressly given. 1 White, 308; Laws Coahuila and Texas, p. 266, art. 109. Our statutes then, as we have seen, prescribe no other specific remedy but *appeal*. And reference to the fundamental law of the land shows no method of appeal analogous to the remedy which has been pursued in this case. That remedy is a writ of error, a writ strictly of common law origin, and which has once been decided by the court as an incident to that system of law, necessarily accompanying its introduction unless expressly excluded. The argument of counsel goes to this extent, that because our Constitution provides that the common law shall at some convenient time be introduced by Congress, and because from the expressions used in the statutes before referred to, it would seem that Congress contemplated some other method of revising the decisions of the inferior courts than appeal, that therefore *that* other method was a "writ of error." That this does not follow we must at once perceive. At the time of the passage of those statutes and the rendition of this judgment, the "common law" had not been introduced as the law of the land; no writ of this nature was given by these statutes; none analogous to be found in the fundamental law to which we must look as the rule of decision; and were we by our decision to declare its existence, we should be traveling further than the law-making power and assuming to ourselves the legislative functions, and

---

679, 686; Tom v. Sayers, 64 T., 339; Frost v. Wolf, 77 T., 455. Act of February 3, 1841 (Gammel's Laws of Texas, vol. 2, p. 608), providing that "when a husband and his wife have sealed," etc., was not applicable to sales of personal property. Stooksberry v. Swann, 12 T. C. A., 66, 73. Act of February 2, 1858 (Gammel's Laws of Texas, vol. 4, p. 968), dispensed with the use of seals on all private instruments, except contracts of corporations. This statute, with the amendment of April 28, 1873 (Gammel's Laws of Texas, vol. 7, p. 503), constitute Rev. Stats. 1895, art. 4862. Harris v. Cato, 26 T., 338; Wimbish v. Holt, 26 T., 673; Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Bernhard v. De Forrest, 36 T., 518; Clayton v. Mooring, 42 T., 182. Under the statute of 1858 and the present law, the following instruments are valid

by judicial act bringing forth before its time, from the legislative womb, the embryo fetus of the common law .

Upon this point then we must conclude that appeal was the only remedy known to our law at the time of the rendition of this judgment. Passing then to the consideration of the second point, it is contended that by the introduction of the common law the writ of error as an incident thereto has also been introduced, and even if that be not true, the statute passed in 1841 has expressly recognized it as one of the modes of appeal; and that under those laws this writ has been properly granted and can rightly be determined by this court. It is not necessary for us to determine in this cause whether by the introduction of the common law the writ of error has also been introduced, nor are we to be considered as so doing. But admit it to be so; let us then examine this case with reference to that statute, and also the subsequent statute expressly authorizing that writ. The fair and proper method of construing statutes is to give them a prospective action, having effect only on causes that may arise subsequent to their passage. Unless therefore express words be used, clearly intimating the will of the legislative body that the operation of a statute should be retrospective, the courts will not give such operation by construction. There is nothing in these statutes which either directly or by implication requires such construction at our hands. But suppose that the intention of the legislative body was that all causes previously adjudicated, where the remedy by appeal had been lost by lapse of time and laches of the parties, should by means of this writ again be revived by this tribunal if the parties so wished; such a statute would be plainly retrospective (1 Cond. Rep. U. S., p. 176) and if it affected the rights of individuals, would under our Constitution be null and void. Const., sec. 16, Bill of Rights. In the case under consideration, the plaintiff had obtained his judgment and the defendant had lost his remedy by appeal, by failing to resort to it in the time prescribed in law. The plaintiff's right had under the law become final and vested. 4 Burrow, 2, 460; 1 Part., 283, Law 19; Id., 311, Law 24; 1 White, 309, sec. 4. A law then which infringes a vested right by retrospective action is void under our Constitution; the judgment in this case was a *vested right* at the time of the passage of these laws; therefore so far as affecting that judgment they are null and void. But as we before said, we do not conceive that the remedy introduced by these laws was intended to apply to cases previously adjudicated and settled, for we can not believe that Congress would lend its aid to those who had slumbered over their rights, or that it would violate another

without seal. (a) Appeal bonds. Russell v. McCampbell, 29 T., 31; Read v. Levy, 30 T., 738; Hart v. Kanady, 33 T., 720; Boney v. Waterhouse, 35 T., 178. (b) Attachment bonds. Bernhard v. De Forrest, 36 T., 518 (overruling Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Hart v. Kanady, 33 T., 720); Gasquet v. Collins, 57 T., 340. (c) Certiorari and sequestration bonds. Courand v. Vollmer, 31 T., 397; Clayton v. Mooring, 42 T., 182; Tompkins v. Toland, 46 T., 584. (d) Appointment of substitute trustee. Jacobs v. Mildred, 53 T., 72; Cheveral v. McCormick, 58 T., 440. (e) Official bond of county treasurer and county scrip. De Wees v. Colorado County, 32 T., 570; Parker County v. Courts, 2 U. C., 398. Written contracts of corporations should be under corporate seal, but the ancient and technical

principle, viz., that there should be some end to litigation by calling up
the specters of departed causes to pass again in review before the judicial
eye; not having expressly done so, we do not feel at liberty to construe
such to be their will by implication, especially when after so doing we
should then be forced to declare their acts unconstitutional and void.
Since the remedy, then, which existed at the time of the rendition of
this judgment had been lost to the party by lapse of time, and as the
remedies subsequently introduced must be construed as applying only
to cases adjudicated since their introduction, we conclude that the writ
of error in this case was improperly granted, and must therefore be
quashed and the cause dismissed.

*Dismissed.*

## NO. XII.

### JOHN DAVIS v. SYLVANUS HATCH.

*Appeal from Jackson.*

JACK, JUSTICE.—The appellee, Hatch, brought an action in Jackson
County against Davis for damages for a failure, as alleged in the petition
on the part of Davis, then sheriff of Jackson County, to levy an attach-
ment which Hatch had sued out against one T. S. Mayberry, and for
improperly serving other writs of attachment upon the property of May-
berry, which some other creditors of Mayberry had obtained before a
justice of the peace. On the trial of the case below the proof was that
Hatch on the 10th of September obtained an attachment against May-
berry; that Davis, the sheriff, received the writ of attachment the same
day and levied it on the next day. The defendant proved that on the
same day C. L. Owen, J. Brown, D. Allen and J. Murry Brown respec-
tively sued out their attachments against Mayberry, on demands cog-
nizable and returnable before a justice of the peace; that those of C. L.
Owen and J. Murry Brown were delivered orally to said Allen to exe-
cute. That the writ sued out by Allen was delivered to said J. M. Brown
to execute on the day of their date. That they were directed to any
lawful constable or the sheriff of the county, but there was no written
deputation made of either by the magistrate; that neither Allen nor
J. M. Brown was a qualified constable; that on the night of that day
Allen levied that delivered to him, and J. M. Brown levied Allen's
attachment. That on the next morning, the writ of J. Murry Brown,
directed as the others, was levied by James A. Sylvester, deputy sheriff
of defendant Davis; after which, on that morning, Hatch's attachment
was levied. That Owen, Allen and the Browns obtained judgments

rule that a corporation could act and speak only by its corporate seal is
obsolete with us. Shropshire v. Behrens, 77 T., 275; Gas Co. v. Harber, 1
App. C., sec. 1123. Where an agent makes a contract under seal, without
disclosing his agency, the party with whom he contracts can not elect to
hold the undisclosed principal upon the contract. This principle is not
changed by our statute. Rev. Stats. 1895, art. 4862; Sanger v. Warren, 91

before a magistrate, took out executions directed to any lawful constable or sheriff of Jackson County; that these executions were delivered to said Sylvester, deputy sheriff, who, having advertised duly, sold the property attached, and applied the proceeds to the executions issued by the justice to the exclusion of Hatch's attachment. The judge in a voluminous charge to the jury instructed them, "that according to the laws, neither the sheriff nor his deputy as such could execute any original or final process issued by a justice of the peace and returnable before such justice in a civil suit." The whole of the charge was excepted to by the defendant, but as the above is the only part of it which we can regard as relevant, we will proceed to determine its correctness. In looking over the act regulating attachments, we find throughout the whole of its provisions that the framers of that statute contemplated the service of writs of attachment by sheriffs, whether issued by and returnable before justices, or from the judge or clerk of the district court. But if any doubt existed as to the power of a sheriff to execute an attachment issued and returnable before a magistrate under this statute, they are altogether removed by a reference to "an act defining the powers and duties of sheriffs," etc. By the seventh section of that act, the power is expressly granted to the sheriff to execute all writs and other process to him legally issued and directed from any justice of the peace or court of record, etc. The charge of the judge below was, we think, erroneous. We are also of opinion that neither under the allegations in the petition nor the proof introduced the defendant could be made liable. It is therefore ordered and adjudged that the judgment of the court below be annulled and reversed.

*Reversed.*

## No. XIII.

### JAMES DENISON, COUNSEL FOR ABSENT HEIRS OF IRA INGRAM, v. SETH INGRAM.

(See Note 50.)

*Appeal from Matagorda.*

HEMPHILL, CHIEF JUSTICE.—Seth Ingram filed his petition in the court of probates for the county of Matagorda in the year 1841, praying to be duly recognized as the sole heir of Ira Ingram, his brother, deceased, and put in possession of his succession with the benefit of an inventory. He alleges that the said Ira Ingram departed this life intestate, or leaving no legal or valid will at the time of his death; that for the purpose of collecting the effects of the estate of the said Ira

---

T., 472. A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T. C. A., 319, 323.

**Note 39.**—Selkirk v. Betts & Co., p. 471.

The Legislature may regulate the remedy, both as to pre-existing and subsequent rights, as to them may seem proper; and a statute changing or modifying it is not unconstitutional and does not impair obligation of con-

Ingram and of paying the claims against the same, the petitioner administered on the said estate, according to the form, terms, etc., prescribed to him by the judge of the probate court for the said county, etc. The petition was demurred to by James Denison, attorney for the absent heirs of the said Ira Ingram, deceased, and the same being overruled, a plea was then filed by way of exception, alleging that the said Ira Ingram at his death left a document purporting to be a will; that said document had been presented to the probate court for the county of Matagorda, for probate as a will; that said court upon proof offered admitted the same to probate as a will and declared the same to be the last will and testament of the said Ira Ingram, deceased; that the same is recorded in the records of the said court; that the probate has never been impeached, and that the said Seth Ingram has acted as executor under said will. The replication to this states substantially that the said Ira Ingram did die intestate, and that the document referred to in defendant's answer was not by the law of the land a will or testament and the same is null and void, and further that the said will has never been admitted to probate or decreed to be executed, according to the law of the land. The defendant joins issue on the second count of the replication, and excepts to the first as raising a collateral issue. It was admitted that Seth Ingram was the sole heir of the whole blood of the said Ira Ingram, deceased, but that there was a brother of the half blood, or his heirs, in the United States of America. The petition was dismissed in the probate court. On appeal to the district court the decree of the court of probate was reversed, and the cause has been brought to this court for final decision. From an examination of the pleadings in the above cause, it appears that issue has alone been joined on the question of fact, whether or not the document purporting to be a will of Ira Ingram, deceased, has been admitted to probate and established as his last will and testament, by the court of probate for the county of Matagorda. The question of the validity of the will was not properly raised by the pleadings, and the objection that the issue thereon was collateral was well made by the defendant. On examining the record for the evidence adduced in relation to the question of probate, or not, of the will, we find that on the 25th of September, 1837, Seth Ingram by petition to the probate court for the county of Matagorda, stated, at the death of his brother, Ira Ingram, that his last will was left in the hands of A. L. Clements, and prayed that the same might be produced for promulgation. In conformity with an order from court for that purpose, the will and codicil thereto were produced on the 26th of September; they were, opened and read aloud by the judge. Evidence was taken to establish

tracts, unless it fails to provide an adequate remedy. Austin v. White, Dal., 434; Austin v. Andrews, Dal., 447; Catlin v. Munger, 1 T., 598; Gautier v. Franklin, 1 T., 732; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 348; Grassmeyer v. Beeson, 13 T., 524, 529; Bender v. Crawford, 33 T., 745, 752; Moore v. Letchford, 35 T., 185, 214; Bentinck v. Franklin, 38 T., 458; Wood v. Welder, 42 T., 396; Treasurer v. Wygall, 46 T., 447; McLane v. Paschal, 62 T., 102; Ward v. Hubbard, 62 T., 559; Collins v. Warren, 63 T., 311; Parker v. Buckner, 67 T 20; Boone v. Chambers, 82 T., 480; Odum

their execution by the testator, and in the words of the record, "the judge signed at top and bottom of each page of the will, agreeably to law." The will was filed and recorded, and on petition from the said Seth Ingram and Spencer H. Jack, they were appointed dative testamentary executors, or administrators with the will annexed, to carry the said will into execution. They took the necessary oaths and gave the bonds required by law. On a careful consideration of the proceedings before the probate court, we are of opinion that they furnish sufficient evidence of the probate and establishment of the said document as the last will and testament of Ira Ingram, deceased. Under the common law, the granting of letters testamentary is conclusive proof of the probate of a will.

It is true that we find no order directing in express terms the will to be carried into execution. But we can not regard such an entry in so many terms, as absolutely essential to the validity of a judgment establishing a will, as duly proven in the court of probates. Where it appears from the proofs exhibited, as it does in this case, that the probate court received evidence as to the execution of the will, that the same was filed and recorded, that letters testamentary were granted for the purpose of carrying the same into execution, we are compelled to recognize the will as having been allowed and established by the said court. The informalities and irregularities which may appear in the entries of the proceedings of the court will not be sufficient to destroy the effect of such a judgment or rebut the presumption that the same was rendered. The will, then, having been admitted to probate by a court of competent jurisdiction, the next question presented for our consideration is whether this judicial act of the court of probates, being unreversed, operates as a bar or preclusion of the present action. We are of opinion that it does. It is a well established rule of law that the judgment of a court of competent jurisdiction is conclusive of the rights of the parties until the same be reversed or vacated. See Brown v. Gibson and Wife, 1 Nott & McC., 326; Lucas v. Bank of Darien, 2 Stewart, 280; Dufom v. La Frane, 11 M. R., 607. The judgment of the court of probates, being in this instance on a matter embraced within its jurisdiction and the same being unreversed, must preclude any action for the purpose of disposing of the decedent's estate according to the laws which regulate successions, until the revocation or reversal of the said judgment. The question of whether the same can or ought to be reversed, having not been presented by the pleadings, can not properly become the subject of consideration.

---

Garner, 86 T., 374; B. and L. Assn. v. Newman, 86 T., 380; Standifer v. Wilson, 93 T., 232; League v. State, 93 T., 553; State v. Williams, 10 T. C. A., 346; Insurance Co. v. Shearman, 17 T. C. A., 456; T. M. Ry. Co. v. Telegraph Co., 24 T. C. A., 198; Etter v. M. P. Ry. Co., 2 App. C., sec. 61; Moore v. State, 20 T. App., 280; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Williams v. Bradley (T. C. A.), U. R. C., 1902. Where a statute gives a new remedy, not repugnant nor inconsistent with the old remedy, the latter is not taken away, and parties have their election between the two. Thouvenin v. Rodrigues, 24 T., 468; Etter v. M. P. Ry. Co., 2 App. C., sec. 58; M. P. Ry. Co. v. Parkhurst, 3 App. C., sec. 159.

The conclusions to which we have arrived, on the fact of the rendition of a judgment of a court of competent jurisdiction prohibiting the will, render it unnecessary to express any opinion as to the extent to which the laws of Louisiana were introduced in matter of probate; whether this was a will or not agreeably to the laws of the land, or whether the appellee has by his own acts compromitted his rights to the succession or claimed by him in this suit. These questions are not presented in the pleadings, nor can they arise as long as the judgment of the probate court remains in full vigor unrevoked. Having inspected the record, because it seems to the court here that there was error in the judgment of the court below, it is ordered, adjudged and decreed that the same be reversed; that the petition be dismissed, and that the appellee pay the costs of this suit.

*Reversed and dismissed.*

## No. XIV.

### ELIZABETH P. TROTT, ADMINISTRATRIX, ETC., v. DAVID PATTON.

(See Note 51.)

*Appeal from Harris.*

BAYLOR, JUSTICE.—Patton sued Elizabeth P. Trott, administratrix, etc., of Henry Trott, deceased, in the court below, for the recovery of sum of $450 due on a joint and several obligation given by Henry Trott in his lifetime, with one Brasfield, to the said Patton. In the petition it is averred that the writing obligatory was executed in the State of Tennessee, one of the United States of America, and that the rate of interest in Tennessee was 6 per cent per annum. The parties below waived the right of trial by jury, and submitted the case to the decision of the district judge. The matters and things being considered by him, he gave judgment in favor of Patton for the debt, with interest at the rate of 8 per cent per annum—there being no proof in the record showing what the rate of interest is allowed by law in the State of Tennessee. The plaintiffs in error, among other objections, seek to reverse the judgment of the court below on the ground that the contract being a foreign one, and 6 per cent alleged in the petition as the rate of interest, it was improper to allow the 8 per cent per annum in the rendition of the judgment. This assignment of error must be sustained. We have already at the present term of this court decided that interest is to be paid on contracts according to the law of the place where they are to be performed, in all cases where interest is expressly or impliedly to be paid. We see no good reason to depart from

**Note 40.**—Stockton v. Montgomery, p. 473.

A law will not be declared unconstitutional unless it is clearly so. Southerland v. De Leon, 1 T., 250; Orr v. Rhine, 45 T., 345; G. B. & C. N. G. Ry. Co. v. Gross, 47 T., 428; Baker v. Torrey, 69 T., 7; Lytle v. Halff, 75 T., 128; State v. McAlister, 88 T., 284; Whitener v. Belknap, 89 T., 273; Railroad Commission v. H. & T. C. Ry. Co., 90 T., 340; Harris County v. Stewart, 91 T.,

(522)

this rule of law. The judgment of the court below must therefore be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

## No. XV. ·

### JOSEPH KENT, ADMINISTRATOR, ETC., v. ALFRED KELSO, SHERIFF, ETC.

*Appeal from Gonzales.*

BAYLOR, JUSTICE.—Joseph Kent, administrator of the estate of Andrew Kent, deceased, filed his petition in the court below, alleging that by virtue of a decree of the probate court for Gonzales County he offered for sale, on the 6th day of October, A. D. 1840, on a credit of six months, a certain parcel of land belonging to the estate of the said Andrew Kent, deceased, containing 800 acres, being a part of the headright league of the said Kent, deceased, situated in the county of Gonzales. At which sale one Miles Dick became the purchaser thereof, and gave his bond with James B. Patrick as his security for the purchase money. That upon default of payment of the amount secured by said bond, the said administrator was entitled by virtue of the statute in such cases made and provided, as well as by the tenor, effect and condition of said bond, to sue out an execution from the probate court for Gonzales County, and by virtue of said execution to sell the property of the said Dicks, or that of his security, for cash to the highest bidder without appraisement. But thereafter, in August, A. D. 1840, upon default of the payment of the sum of money secured by the bond, the said administrator obtained from the probate court for Gonzales County an execution, directed to the sheriff of said county, commanding him that of the goods and chattels, lands and tenements, of the said Dicks, and his security Patrick, he levy and sell sufficient thereof to satisfy the amount of said bond, together with the interest and costs thereon. The said administrator further alleges that Alfred Kelso, the sheriff of said county refused to sell the prperty of the defendants, Dicks and Patrick, without appraisement, and prayed the court below for a mandamus to compel him to do so, or show cause why he had failed to make the money on said execution; that the sheriff be cited to appear, etc. At the next term of the district court for Gonzales County, the sheriff came into open court and acknowledged service of the process. Whereupon the court rendered the following judgment and decree: "Came the parties, by their attorneys, and the defendant having, by indorsement on the petition,

---

133; Mitchell County v. City Nat. Bank, 91 T., 361; Flannagan v. Nasworthy, 1 T. C. A., 470; Languille v. State, 4 T. App., 312; Ex parte Wilbarger (T. Cr.), U. R. C., 1900; Fletcher v. Peck, 6 Cranch, 87; Parsons v. Bedford, 3 Pet., 433; United States v. Coombs, 12 Pet., 72; Grenada County v. Brogden, 112 U. S., 261; Powell v. Pennsylvania, 127 U. S., 678. The preamble will not be looked to for the purpose of rendering the statute unconstitutional, as it is no part of it. Sutherland v. De Leon, 1 T., 250. United States v. Fisher, 2

admitted the grant, issuance and service of the alternative mandamus prayed for and now in court, declaring his inability to know his duty in regard to the sale mentioned in the petition, without the instruction of the court, and submitting in all things to the order and decree of the court in the premises, it is therefore ordered and decreed by the court, that he make sale of the property, by the petitioner in the case mentioned in the petition, for cash, to the highest bidder, without appraisement," etc. From which judgment and decree the said Miles Dicks, one of the defendants in the execution, prayed an appeal, and seeks to reverse it here on various grounds—the first of which we deem it necessary only to notice, as that will in our judgment be decisive of the case. It is objected by Dicks that the execution mentioned in the petition for a mandamus improperly issued from the probate court, that court having no jurisdiction over the subject matter; but that the district court is the proper tribunal to resort to for judgment and execution, and to that court only, which has exclusive original jurisdiction in the premises. We think the objection well taken, there being no law conferring jurisdiction on the probate court in such cases. It is well settled that consent of parties can not give jurisdiction. The execution in this instance was a mere nullity, having emanated from a court which had no jurisdiction over the subject matter. It must therefore be quashed, the judgment and decree of the court below annulled, set aside and reversed.

*Reversed.*

## No. XVI.

### Board of Land Commissioners v. Jesse Walling, Assignee.

(See Note 52.)

*Appeal from Nacogdoches.*

HEMPHILL, Justice.—Jesse Walling, in his petition, states that Joshua Seeting, then residing in the county of Nacogdoches, did on the day of the date of the declaration of independence sell and transfer to him the claim of the said Seeting to a league and labor of land, to which he was entitled as a resident citizen of Texas and head of a family; that having made application to the board of land commissioners, they refused to issue either to him as assignee, or to the said Seeting, a certificate for a league and labor of land. On the trial before the district court, the said Walling introduced in evidence the instrument purporting to transfer the headright of Seeting to himself, the district attorney excepting to its introduction. It was also proved that Seeting was a citizen of Texas at the date of the declaration of independence; that he was a married man,

---

Cranch, 358; Postmaster-General v. Early, 12 Wheat., 136; Hadden v. Collector, 5 Wall., 107; Y. & M. V. R. Co. v. Thomas, 132 U. S., 174.

**Note 41.**—Forbes, Brooks & Co. v. Hill, p. 486.

Defendant in execution has the right to point out property to be levied on. Scott v. Allen, 1 T., 508; Cloud v. Smith, 1 T., 611; Bryan v. Bridge, 6 T., 137; Wilson v. Smith, 50 T., 365; Atchison v. Hutchison, 51 T., 223; Railway

a head of family, and served in the army in 1835; but it was not proven that Seeting was here at the time of the application for the certificate to the board of land commissioners, nor was he here at the passage of the land law in 1837. The jury returned a verdict in favor of Walling, and from the judgment of the court thereon an appeal has been taken on behalf of the Republic to this tribunal. There are some questions arising from or intimately connected with the consideration of this cause of a magnitude and importance sufficient to exercise the deepest interest and to demand the most patient investigation, but as the urgent and unfavorable circumstances under which we are pressed to the hasty preparation of our opinion will not permit more than an imperfect examination of such point or points alone as are decisive of the controversy, our attention will in this case be directed to the single but controlling question of whether under the laws the appellee could sustain his claim to land as set forth in his petition, without proving, as required by the twelfth section of the land law of 1837, that his assignor was actually a resident of the Republic at the period of the application for the grant. By the provisions of the Constitution, lands are granted to all persons living in Texas at the period of its adoption, viz: to heads of families, one league and one labor of land; and to single men, one-third of a league. But although their claims have thus been sanctioned by the paramount authority of the Constitution, yet no mode was prescribed in that instrument by which an individual could obtain a separate portion of the public domain in satisfaction of his claim, or by which a title for the same might be secured or perfected. No surveys were authorized or titles ordered to be granted for that purpose, but on the contrary it was expressly declared that no survey or title, which might be made after the adoption of the Constitution, should be valid, unless such survey or title was authorized by the Convention, or some future Congress of the Republic. As no process then was provided by the Constitution by which such claimant might receive his share of the public lands, was it competent for those claimants or any of them to institute proceedings before the judicial tribunals of the country against the government, for the purpose of procuring a title or grant to a separate share of the public domain, without the previous sanction of legislative authority for the prosecution of such an action? That it is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent, has grown into a maxim sanctioned as well by the laws of nations as the general sense and practice of mankind. Such an exemption is enjoyed by all independent sovereignties, and nowhere within the scope of our investi-

---

v. Wright, 88 T., 346; Jackson v. Browning, 1 App. C., sec. 606. Provision of statute requiring officer to request defendant to point out property is directory, and failure to do so does not render sale void, in the absence of fraud. Pierson v. Flanagan, 52 T., 266; Odle v. Frost, 59 T., 684; Allen v. Pierson, 60 T., 604; Stone v. Day, 69 T., 13; Beck v. Avondino, 82 T., 314; Alexander v. Benner, 10 T. C. A., 111; Fatheree v. Williams, 13 T. C. A., 430; Ellis v. Harrison, 24 T. C. A., 20; Barbee v. Heflin, 1 App. C., sec. 744; McKennon v. McGown (T. Sup.), U. R. C., 1889. Only entitled to reasonable opportunity to point out, and officer is not required before making levy to

gation has the institution of judicial proceedings to recover claims from a State or nation been regarded as a matter of natural, legal or constitutional right. Governments are instituted to promote the happiness of the whole community, but their beneficent powers would be paralyzed and their ends defeated were they subjected to the embarrassments, arising from the perpetual suits which, were they matters of right, could be prosecuted by every individual for the redress of real or supposed grievances. The experience of ages and the wisdom of the most enlightened statesmen and judicial expositors have sanctioned the doctrine, that less injury would arise from the delay or even the denial of justice to individuals than from the distraction and imbecility consequent upon the government's being involved in continual and harassing controversies, at the will or caprice of every citizen in the community. We intend not, however, to consider or combat the objections which have been urged against this great conservative principle. It has long been established even in governments most favorable to human liberty, and can not be questioned or controverted  That wise governments will always do justice to its individual citizens is to be presumed, but should it be refused or delayed, and if for reasons essential to the safety or welfare of the State, or if even from the mere exercise of despotic authority, the government would not consent that claims against itself should be adjudicated in courts of justice, it would be impossible to obtain relief through the instrumentality of judicial proceedings. The wrong might be of a grievous nature, but the powers of judicial tribunals, however great they may be, are not of a character so transcendent as to enable them to afford the remedy. Vide 3 Story on Const., p. 535; Federalist, No. 80; Chisholm v. Georgia, 2 Dall., 419; 2 Pet., 635, 674; 1 Black. Com., 241, 243; 1 Term Rep., 172.

As the appellee then could not sue the government without its consent expressed in a legislative act, let us inquire whether there is any such provision of law as would authorize him to appear before any tribunal and obtain any such warrant or order as would secure a survey and title for the amount of land embraced in his claim. By the eleventh section of an act to reduce into one act and amend the several acts relating to the establishment of a general land office, passed December 14, 1837, boards of land commissioners were established in the several counties for the investigation of headright claims to land, and upon the production of the proof prescribed by the law they were authorized and required to grant

seek defendant out of the county. Cook v. De la Garza, 13 T., 431; Sydnor v. Roberts, 13 T., 598; Kendricks v. Rice, 16 T., 254; Choate v. Redding, 18 T., 579; Atchison v. Hutchison, 51 T., 223, 233; Kingsland v. Harrell, 1 App. C., sec. 739. May be pointed out by agent of defendant. Cornelius v. Burford, 28 T., 202. By plaintiff or his agent when defendant fails to point out. Bryan v. Bridge, 6 T., 137; Kendrick v. Rice, 16 T., 254; Batte v. Chandler, 53 T., 613. By surety when his principal fails to do so. Martin v. Rice, 16 T., 157. Officer is not required to find personal property to levy on. Smith v. Frederick, 32 T., 256; Pierson v. Flanagan, 52 T., 266; Anderson v. Oldham, 82 T., 22; Ellis v. Harrison, 24 T. C. A., 20. Officer is not bound to levy on property pointed out by defendant when it does not belong to him or when it is exempt property. Ross v. Lister, 14 T., 469; Carey v. Tinsley, 22 T., 383;

certificates to the claimants. The twelfth section provides for the number of witnesses, as well as the facts, which must be established before the issuing of a certificate; the purchaser of a headright being required to prove that the person represented as entitled to the same was actually a resident in the Republic at the time the application for the grant was made. The question arises, then, whether the appellee, as purchaser of Seeting's headright, could obtain a certificate on any other proof than such as was required by the law. This authority to sue the Republic for his claim was derived from this law, and without this or some other legislative act it could not have been investigated by any tribunal, whether of limited or general jurisdiction. Can he then invoke the aid of this law for the purpose of perfecting his title, with complying with the conditions which qualify the tender of its assistance? As it was through the agency of Congress alone that land claims could be established into grants, it was surely competent for that body to prescribe the conditions and proofs essential to the recognition of these claims, and its power for that purpose is assuredly not to be questioned, when its exercise does not conflict with any of the provisions of the Constitution. We can not perceive that this fundamental law is violated by the requisition of the statute, that where claims, similar to the one in dispute, are set up against the government, the purchaser should be required to prove that his vendor was a resident of the Republic at the period of the application for the grant. We will not now enter upon a review of the various provisions of the Constitution to sustain this position, nor do we intend to decide any questions relative to sales of lands, or the requisites which may be supposed essential to their validity. Under the law of 1837, purchasers of headrights are entitled to certificates therefor, on making the necessary proof. This law only provides for such claims as are recognized under the same. It does not invalidate, in express terms, any claims to lands of any description, if we except the prohibition of suit by alien empresarios, though there may be various classes thereof, for the establishment of which no provision has been made. Should there be such claims in existence, they must, without further legislative action, continue to lie, as they do now, in a dormant condition. Legislative energy can alone quicken them into life, and sustain them to maturity; they can neither be surveyed nor perfected into a grant, and if they were, neither the surveys nor title could possess validity, the same having been made without the sanction of the Convention, or of a Congress of the Republic. It is hereby ordered, adjudged and decreed, that the judgment of the district court be and the same is hereby reversed.

*Reversed.*

---

Garvin v. Hall, 83 T., 295. Validity of sale is not affected by return failing to show that defendant was called on to point out property, or who pointed it out, or that notice of sale was posted as required by law. Howard v. North, 5 T., 290; Sydnor v. Roberts, 13 T., 598; Crabtree v. Whiteselle, 65 T., 111.

## No. XVII.

### JOHN GREGG V. JOHN YORK.

#### (See Note 53.)

*Appeal from Milam.*

OCHILTREE, JUSTICE.—In this case York sued out an original attachment against the estate of Gregg, returnable to the spring term of the District Court of Milam County, for the sum of $3400. At the fall term, 1840, of said court, a judgment was rendered against the defendant, from which said judgment a writ of error was taken to this court. It is not essential to a proper disposition of this cause that we should pronounce in detail upon the various errors assigned, but will confine our opinion to that assignment which sets forth that there is a material variance between the grounds of attachment sworn to in the affidavit of York and those recited in the writ of attachment as having been sworn to by him. The ground set forth in the affidavit is, that the said John Gregg resides beyond the jurisdiction of the courts of the Republic, so that the ordinary process of law can not be served on him; and further, that the said John Gregg is so making way with his property, that the said plaintiff will be likely to lose his debt. The writ describes the affidavit as follows: "Oath also having been made that the said John Gregg absconds or secretes himself, or resides beyond the jurisdiction of the court, so that the ordinary process of law can not be served against him, or is about to remove his property beyond the jurisdiction of the court," etc. Ala. Rep., 14. The writ of attachment is a summary remedy created by statute; the statute should be followed in all respects, and all the incidents pertaining to the remedy must be strictly complied with. See McCord, 312. Inasmuch as there is a material departure from the affidavit in the writ, the latter should have been quashed below, when the motion was there made. The writ is also double and uncertain as to the ground on which the plaintiff intended to found his attachment, and is not of such a definite and certain character as would enable the defendant to know what he had to answer, so that he might plead thereto a direct and unequivocal plea. 1 Chitty, 285. We are therefore of opinion that the court below erred in refusing to quash the attachment, and that the judgment below be reversed and annulled.

*Reversed.*

---

Note 42.—Tinnen v. Matthews, p. 491.

[1] Entire day should intervene between judgment by default nisi and the final judgment. O'Connor v. Towns, 1 T., 107; Wheat v. Davidson, 2 T., 196. Facts alleged in the petition are taken to be true and proven when judgment is by default. Long v. Wortham, 4 T., 381; Willard v. Conduit, 10 T., 213; Crain v. Griffis, 14 T., 358; Guest v. Rhine, 16 T., 549; Watson v. Newsham, 17 T., 437; Prince v. Thompson, 21 T., 480; Ricks v. Pinson, 21 T., 507; Morrison v. Van Bibber, 25 T. Supp., 153; Farr v. Wright, 27 T., 96; Niblett v. Shelton, 28 T., 548; Boles v. Linthicum, 48 T., 220; Evans v. Daniel, 25 T. C. A., 362; Mason v. Slevin, 1 App. C., sec. 11; Hawkins v. Haney, 1 App. C., sec. 723; Johnson v. Dowling, 1 App. C., sec. 1090; Whitaker v. Wallis, Landis

## No. XVIII.

### WILLIAM PATTERSON v. BRYAN AND KARNES.

*Appeal from Bexar.*

OCHILTREE, JUSTICE.—Patterson sued Bryan and Karnes in an action of debt on a protested draft. The defendants came into court and in general terms denied any indebtedness. Under this plea or answer, the defendants offered to prove by the books of the late firm of Bryan & Karnes that the plaintiff was indebted to the defendants in a sum exceeding the amount of the instrument sued on by the plaintiff, which testimony was rejected by the court as inadmissible under the plea of the defendants, on the ground that there was no plea or answer of the defendants stating such defense with a bill of particulars, and that so the evidence would operate surprise to the adverse party; to which opinion of the court the defendants' counsel excepted, and appealed to this court. The defendants' plea was filed on the 12th March, 1841, nearly twelve months after the passage of the statute allowing discounts and set-off, which is so entirely plain and positive in its terms that we can give no stronger reason for affirming the judgment of the court below, than by referring to the second section of the said act— page 62, Laws of 1840. We are therefore unanimously of the opinion that the judgment of the court below be affirmed, with 10 per cent damages thereon for delay, etc.

*Affirmed.*

## No. XIX.

### GEORGE HUFF, ADMINISTRATOR, ETC., v. JAMES K. McCREARY, CLERK, ETC.

#### (See Note 54.)

*Appeal from Austin.*

OCHILTREE, JUSTICE.—In this case, which was brought up by appeal from the county of Austin, it appears that the plaintiff instituted an action of debt against W. P. Huff and Thomas Barrett, by filing his petition in the office of the defendant, who was the clerk of the District Court of Austin County; that the defendant failed and refused to issue the citation prayed for in the petition as required by law, unless the plaintiff should first pay the cost thereof. At the fall term, 1841, of the district court, the plaintiff filed his motion for a rule against the defendant to show cause why he had not issued the writ of citation prayed for. The clerk answered to the rule, that the papers were duly prepared by him and tendered to the plaintiff upon the payment of costs, or on the plaintiff entering into security therefor. The rule was

discharged by the court below. By reference to the act of Congress establishing the jurisdiction and powers of the district court, volume 1, section 17, page 203, it will be seen that when any original process shall issue out of any court in this Republic, the plaintiff at the *return* of such process, or any time thereafter before final judgment, shall upon the motion of any person interested be ruled to give sufficient security for all costs, etc. The terms of the act gave the clerk no discretion. It was his imperative duty to have issued the citation and on the *return* of the process, or at any time thereafter, he might have made his motion for security for costs.

The rule should have been granted. It is therefore the unanimous opinion of .the court that the judgment of the court below be reversed and the case remanded.

*Reversed and remanded.*

## No. XX.

### HUFF, ADMINISTRATOR, ETC., v. FOLGER, LAMB & CO

**(See Note 55.)**

*Appeal from Austin.*

BAYLOR, JUDGE.—Folger, Lamb & Co. sued Huff as the administrator of Samuel Sawyer, deceased, for the recovery of $1659.69, due by promissory note averred to have been lost during the revolution. They obtained a special verdict in their favor for the sum of $2499.35, being the amount of principal and interest for ten years at 5 per cent. The jury also found that the debt was contracted at New York, in the United States of America, and from the time of Huff's last acknowledgment of the debt to the time of commencing suit, a little longer than three years. On this verdict judgment was rendered for the plaintiffs, which is sought to be reversed here on the ground that the verdict and judgment is for interest at 5 per cent when no interest should have been allowed, or if any it should have been the interest of the State of New York, one of the States of the United States of America. Upon an examination of the facts of the case as certified to by the judge below, we find no proof therein contained showing what rate of interest is allowed by law in the State of New York, and as interest was computed by the jury at 5 per cent per annum for ten years, the supposed interest of this country, we think this was manifestly wrong. Where a contract is made in another country and with reference to that country, it must be governed by the laws of the place where it is to have its

---

& Co., 2 App. C., sec. 560; Welch v. Holmes, 2 U. C., 342. To warrant, facts must be stated with sufficient certainty to inform the court what judgment to enter without looking to evidence not within allegations. Judgment is void, if no cause of action is alleged in petition. Hall v. Jones, 3 T., 305; Johnson v. Davis, 7 T., 173; Pressly v. Testard, 29 T., 199; Townsend v. Ratcliff, 50 T., 148; Kimmarle & Hirsch v. H. & T. C Ry. Co., 76 T., 686; Hawkins v.

effect, and foreign laws must be proved as facts. The district court could not therefore judicially know, unless from the finding of a jury on evidence submitted to them (which the record shows was not the case in this instance), what rate of interest is allowed in the State of New York; under such circumstances neither the court nor the jury were authorized to give the supposed rate of interest of this country. See Story's Conflict of Laws, pp. 241, 291, and the authorities there cited. It is therefore the unanimous opinion of the court that the verdict be set aside, the judgment reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

## No. XXI.

### REBECCA CUMMINGS, ADMINISTRATRIX, v. ANTHONY BUTLER.

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought into this court by a writ of error from Austin County. The plaintiff in error assigns among various other grounds, "that after judgment by default, and a writ of inquiry being ordered upon an unliquidated demand, the judgment was made final by the court without the intervention of a jury." The record shows that the defendant having failed to appear and answer, on motion of plaintiff's attorney judgment by default was rendered by the court, Friday, the 27th of April. This case was submitted to the court, whereupon judgment was rendered by the court against the defendant for the amount of $400, with interest from the 7th of April, 1839, till paid. The statute prescribes (volume 4, page 89) that in suits upon unliquidated demands the intervention of a jury must be had to ascertain the amount of indebtedness, before the judgment by default can be made final. Upon this ground the judgment of the district court must be reversed and remanded. It is therefore unnecessary to discuss the other causes of error which have been assigned.

*Reversed and remanded.*

## No. XXII.

### REBECCA CUMMINGS, ADMINISTRATRIX, v. OLIVER JONES.

(See Note 56.)

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought by appeal from the District Court of Austin County. It was an action brought in that court by

---

Haney, 1 App. C., sec. 723; Stringfellow v. Thomson, 1 App. C., sec. 1111; Seastrunk v. Pioneer S. & L. Co. (T. C. A.), U. R. C., 1896. It can not be rendered on a contract different from that alleged in petition. Trabue v.

Oliver Jones against Rebecca Cummings, administratrix of John Cummings, to recover damages on a breach of covenant by the intestate in his lifetime. There was a verdict for the plaintiff, a new trial was asked for and refused by the court, and the defendant appealed. The record contains a statement of facts, certified by the judge below, containing many material facts as to the contract and breach thereof on the part of the intestate, and damages sustained by the plaintiff. But it does not show that the plaintiff proved a demand of the administratrix and her refusal to allow the claim as a debt against the estate. The counsel for the appellee insist that this court ought to presume that a demand was proven, inasmuch as the defendant's counsel below raised no objections to the want of such evidence, nor asked any charge of the judge in relation to it. This position would, we think, be correct, if the record itself did not contain a certificate of the judge that the statement of facts sent up contains all the evidence introduced on the trial below. We are bound to take the record as true. The question then presented to us is: did the plaintiff make out his case in the district court? The statute (volume 4, page 116) directs, that no bearer of a claim against a succession shall commence an action against such succession before presenting such claim to the administrator, etc., for allowance. That if the claim be not allowed by the administrator, the owner thereof, *for the purpose of establishing the same,* may bring his action, etc.

The petition must contain an allegation of such demand and refusal, and it is equally necessary to prove it. This proof in the case before us was not made in the trial below.

The verdict of the jury was not sustained by the evidence and a new trial ought to have been granted.

Let the judgment be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXIII.

### CAVENAH v. SOMERVILL.

*Appeal from Matagorda County.*

OCHILTREE, JUSTICE.—We learn from the record sent up in this cause that at the fall term, 1840, of the District Court of Matagorda County, Alexander Somervill, the defendant in this action, recovered a judgment against Charles Cavenah, the plaintiff, and one Randal Jones, for the sum of $1000, with interest and costs, upon a note executed by said Cavenah and Jones to one Secrest, and by Secrest indorsed to Somervill. After the issuance of execution on said judgment, Cave-

---

Stoneum, 20 T., 453; Graves v. Farquhar, 20 T., 455; Johnson v. Stallcup, 41 T., 529. Nor when petition discloses a void or illegal contract. Moseley v. Smith, 21 T., 441; Campbell & Jones v. State Central Bank, 1 App. C., sec.

nah filed his petition, praying that the said judgment be enjoined, alleging the same to have been unjust, illegal and oppressive, for this, that the consideration for which said note was executed was insufficient, fraudulent, illegal and void. He further alleged, that at the trial at law he was prevented from attending court by the severe indisposition of himself and family; that about the time of the court his son-in-law died, so that his presence was imperatively required at home; that he had confided his defense to one Edward L. Homes, Esq., an attorney at law, who died before the trial, and that the attorney to whom his business had been committed, from the fact that he had not an opportunity of conferring with Cavenah, did not introduce the necessary testimony to establish his defense. Upon this petition, his honor, Wm. J. Jones, judge, etc., issued his order for a writ of injunction. Somervill, having been brought into court, demurred to the bill of Cavenah, on the ground that he, the said Cavenah, had appeared by counsel in the suit at law, and by his said counsel had pleaded the general issue, and that the matters and things set forth in his bill were properly cognizable before that tribunal, praying judgment, etc. The demurrer was overruled. Somervill then answered over, denying his knowledge of the consideration given for said note to Secrest, alleging that he had got it in the fair course of trade for a valuable consideration; denying all fraud or collusion in the transaction on his own part, or knowledge of it on the part of others. Upon this issue the cause was submitted to the jury; and the evidence proved that the note sued on had been made for the purpose and was staked on the event of a horse race, which was run between the horses of Secrest and Cavenah, and fairly won by Secrest. A verdict was returned for the plaintiff. We do not deem it necessary to recite any further portion of the testimony or proceeding in this case, saving so much of the charge of the presiding judge as was applicable to such points in the case as we feel it incumbent on us to decide. The court charged the jury that if they believed the note was based upon a gaming transaction, they should find for the plaintiff. The court charged further that at the civil law, horse racing was a species of gambling. The points in this case, presented for the action of this court are these:

1. Did the court below err in refusing to sustain the demurrer to the bill for injunction?

2. Could not Somervill, a bona fide holder, recover on the note?

Without expressly answering the first question, this court will intimate the opinion that it will at all times view with the strictest scrutiny applications for relief on the chancery side of our courts, against judg-

160. When citation is by publication, judgment by default does not dispense with proof of material facts. Doty v. Moore, 16 T., 591.

[2] Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Huff v. Folger, Dal., 530; Scott v. Maynard, Dal., 548; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 501; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T.,

ments at law rendered, as was the judgment in this case, after issue joined. Hard cases should not subvert established precedents. The sickness and other misadventures, as set forth in the petition of Cavenah, certainly would have afforded him ground for relief in equity, if it had appeared from the record that he was wholly unrepresented when his case was called for trial. But this was not the case; for his petition admits and the record shows that his attorney pleaded the general issue, and that under this issue the cause was submitted to the jury, and a verdict returned for Somervill, the then plaintiff. It would certainly be a violent presumption to suppose that Cavenah would have employed an attorney and left him in total ignorance of the nature of his defense. We will not say that the court erred in charging the jury that horse racing was such a species of gaming under the civil law as would preclude a recovery on a contract founded thereon. In this case the necessity does not exist for the exercise of that sort of judicial legislation which has been assumed by the courts both in England and many of the United States, by which they undertake to declare what is and what is not contrary to public policy.

Somervill answers, that he is a bona fide holder of the note; and no proof has been introduced to show that there was a scienter on his part, of the nature of the consideration for which the note was given, or the time at which he became the owner. Horse racing not having been declared by the civil law illegal, nor inhibited by statute, the innocent holder is entitled to recover. Chitty on Bills, p. 52. A motion for a continuance before trial, or for a new trial after verdict, would, we have but little doubt, have been sustained by the court who granted the injunction. These were the legitimate resorts of the party; having failed to make use of them, this court is not prepared to say that the plaintiff made such a showing as justified the court below in sustaining the bill for injunction. Illegality of consideration, unless it has been so expressly declared by the Legislature, will be no defense in an action at the suit of a bona fide holder without notice of the illegality, unless he obtained the bill after it became due. Chitty on Bills, 82.

The judgment of the court below is reversed, the injunction dissolved, and a procedendo awarded to the District Court of Matagorda County.

*Reversed.*

Judge Baylor says: "I concur in this opinion so far as the illegality of the injunction is concerned, but give no opinion on the other points involved in the case."

54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94 T., 25; Appollos v. Standiforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. Co. v. Thompson, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in dif-

## No. XXIV.

### MAIDEN v. FARIS, BROWN AND CALDER.

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—At the March term of the District Court for the County of Brazoria, in the year 1841, a judgment was obtained by the plaintiff against George Brown and Robert S. Calder by default (the action as to Faris having abated by his death). The suit was for damages for failure to comply with the conditions of a bond given by defendants, which bond was the foundation of the action, and the jury assess the damages at $1000. The record is brought into this court by writ of error and the following assigned as error: "that the judgment was rendered against Brown and Calder, when no sufficient service had been made upon Brown, one of the defendants." By reference to the record, we find the sheriff's return upon the writ and petition in these words: "Served George Brown with a copy of this writ and petition, by leaving the same at his house, on the 26th of February, 1839; service accepted by Calder." By reference to volume 1, Statutes of Texas, p. 201, we find that personal service of all process was required to be made on the defendant; and not until the 5th of February, 1840 (4th volume, p. 88), was that law modified or changed. We find that this writ and petition were issued and served previous to the passage of the last law. The defendants neither appeared nor answered, and the judgment went by default.

The defect is fatal, and the cause must be remanded for a new trial.

*Remanded.*

## No. XXV.

### MONROE EDWARDS v. THE REPUBLIC OF TEXAS.

**(See Note 57.)**

*Appeal from Brazoria County.*

OCHILTREE, JUSTICE.—Monroe Edwards, the plaintiff in error, was brought by writ of habeas corpus before the Hon. James W. Robinson, district judge, etc., on the 7th day of May, 1839, and after the hearing of testimony was recognized in the sum of $10,000, conditioned that he should make his appearance before the honorable the District Court for the County of Brazoria, at a court which was held at Brazoria on ——, to answer a charge of forgery. At the fall term, 1839, of the District Court of Brazoria, Edwards having failed to appear, a

ferent States, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the lex loci rei sitas governs. A mortgage executed without the State,

---

contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermitt, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

(536)